ANGELA L. MEDINA, peticionaria, *v.* TRIBUNAL SUPERIOR, SALA DE SAN JUAN, HON. EDNA ABRUÑA RODRÍGUEZ, JUEZ, demandada.

*Número:* O-75-214      *Resuelto:* 6 de noviembre de 1975

*Thomas Garity,* abogado de la peticionaria; la parte demandada no compareció como tampoco el Dr. Marcos A. Zequeira.

El Juez Asociado Señor Torres Rigual emitió la opinión del Tribunal.

Con frecuencia casos sencillos en sus hechos son útiles para ilustrar el entendimiento y aplicación de disposiciones técnicas y complejas de las leyes. El caso de autos es un buen ejemplo con respecto a la Regla 4 de Procedimiento Civil que regula todo lo concerniente al emplazamiento.

Angela Medina, residente en España, instó en Puerto Rico demanda en cobro de dinero por concepto de alimentos adeudados contra Marcos Zequeira, residente de Miami, Florida. El diligenciamiento del emplazamiento se efectuó por un alguacil del Condado de Dade, Florida. Zequeira compareció a los únicos fines de impugnar la jurisdicción del tribunal de instancia alegando estar domiciliado en Florida. El tribunal acogió el planteamiento y lo declaró nulo por el fundamento de no "cumplir estrictamente con los requisitos de la Regla 4.7 que dispone para el emplazamiento sustituto dentro de los límites territoriales nuestros."

Angela Medina nos pide la revocación de lo resuelto por el tribunal de instancia basándose en el fundamento erróneo de que la Regla 4.3 permite a un demandante diligenciar el

emplazamiento de un demandado no domiciliado en Puerto Rico y ausente de esta jurisdicción mediante la entrega del mismo por un alguacil del lugar del diligenciamiento, que en este caso sería el del Condado de Dade.

■ La Regla 4.3 al disponer que

". . . En el caso de demandados ausentes de Puerto Rico, el emplazamiento podrá ser diligenciado por un alguacil de la jurisdicción donde se haga la entrega o por un abogado admitido a la práctica de la profesión en dicha jurisdicción o en Puerto Rico, o por una persona designada por el Tribunal para ese propósito.",

preceptúa únicamente quién puede diligenciar el emplazamiento pero en forma alguna confiere jurisdicción al tribunal sobre la persona de un demandado ausente.

La función judicial de los tribunales como parte del ejercicio del poder soberano del Estado se circunscribe generalmente a personas presentes o bienes ubicados dentro de los límites territoriales del Estado. Este principio general de derecho público constituye, en efecto, el fundamento conceptual de toda la doctrina de jurisdicción sobre las partes. El principio no es, sin embargo, absoluto y desde *Huete* v. *Teillard*, 17 D.P.R. 49 (1911), en que se acoge en nuestra jurisprudencia las normas establecidas en *Pennoyer* v. *Neff*, 95 U.S. 714 (1877), para adquirir jurisdicción en una acción personal contra un no domiciliado ausente, ha ido cediendo gradualmente su rigor dogmático ante el imperativo de los cambios tecnológicos operados en el campo de la transportación y de las comunicaciones y, como consecuencia de éstos, al trasiego continuo de personas y bienes entre las diversas jurisdicciones territoriales.

*Pennoyer* puntualizó el elemento de presencia física del demandado en los límites territoriales como base para el ejercicio de jurisdicción en acciones personales. Durante muchos años prevaleció su influjo restrictivo tanto bajo el régimen del antiguo Código de Enjuiciamiento Civil, según interpretado en *Huete* v. *Teillard*, supra, y seguido en *Arrarás* v. *Arzuaga*,

53 D.P.R. 713 (1938), como bajo las Reglas de Enjuiciamiento Civil de 1943. El tribunal no podía pues ejercer jurisdicción en una acción personal sobre un demandado domiciliado pero ausente de Puerto Rico, a menos que se trabara previamente un embargo sobre bienes de su pertenencia.

En realidad *Pennoyer* no llegaba tan lejos si se tiene en cuenta que sus hechos se referían a un demandado ausente no domiciliado. Sin embargo, en Puerto Rico y en otras jurisdicciones de los Estados Unidos se aplicó indistintamente a todo demandado ausente independientemente de su domicilio. *Autoridad de Fuentes Fluviales* v. *Corte*, 65 D.P.R. 480 (1945).

No es hasta tres décadas más tarde que en *Milliken* v. *Meyer*, 311 U.S. 457 (1940), empieza a enervarse el dogma de la presencia física al admitirse en dicho caso el hecho del domicilio como fundamento para el ejercicio de la jurisdicción en una acción personal contra un demandado ausente. No hay duda de que el domicilio genera una obligación recíproca entre el Estado y la persona que no se disuelve por la mera ausencia. Los deberes que dimanan de esa relación— como por ejemplo, estar sujeto a reclamaciones en los tribunales del domicilio—no dependen de la continua presencia del domiciliado en el territorio. No es ya necesario trabar embargo previo para adquirir jurisdicción sobre un domiciliado ausente en una acción personal.

Conforme con esta nueva postura, la Regla 4.5 de Procedimiento Civil de 1958 eliminó el requisito de embargo previo ". . . si el demandado está domiciliado en Puerto Rico. . . .", permitiendo sustituir la notificación por edictos con la entrega personal, a tenor con lo dispuesto en la Regla 4.3 que transcribimos anteriormente.

La inadecuacidad del criterio de presencia física se hizo más patente en el caso de corporaciones de negocio extranjeras. Siendo éstas por mera ficción jurídica personas no susceptibles de existir fuera del Estado de incorporación, *Bank*

of *Augusta* v. *Earle*, 38 U.S. 517; Goodrich, *On Conflict of Laws* 131 (3ra. ed.), no podían ser demandadas en otros estados que no fuera el de su incorporación.

La teoría de presencia física se filtra de todos modos en la ficción corporativa al resolverse en *Philadelphia & Reading Railway Company* v. *McKibbin*, 243 U.S. 264 (1917), que una corporación extranjera estaba sujeta a la jurisdicción del tribunal si llevaba a cabo transacciones de negocios en tal forma y extensión que pudiera inferirse que estaba presente.

El encierro de la jurisdicción en moldes tan restrictivos hizo necesaria la elaboración de otros enfoques para atender la ficción corporativa. Surgió así la teoría del consentimiento. Como la corporación extranjera no podía hacer negocios en otras jurisdicciones sin la autorización del Estado, éste podía imponer como condición para ello que la corporación consintiera a ser demandada y que designara un agente para recibir emplazamientos dentro de la jurisdicción. *The Lafayette Insurance Co.* v. *French*, 59 U.S. 404 (1855). Si la corporación extranjera no cumplía con este requisito se asumía que había consentido implícitamente a ser demandada. *Simon* v. *Southern Railway*, 236 U.S. 115 (1915). El mero hecho de hacer negocios dentro de la jurisdicción constituía consentimiento implícito. *Connecticut Mutual Life Insurance Co.* v. *Spratley*, 172 U.S. 602 (1898). Para una discusión de este interesante tema puede verse *Development in the Law: State-Court Jurisdiction*, 73 Harv. L. Rev. 909.

La teoría del consentimiento implícito se extendió más tarde a la conducción de vehículos de motor dentro de la jurisdicción por personas no residentes. *Kane* v. *State of New Jersey*, 242 U.S. 160 (1916); *Hess* v. *Pawloski*, 274 U.S. 352 (1927).

En Puerto Rico incorporamos la teoría del consentimiento en la Ley Núm. 433 del 14 de mayo de 1951, 32 L.P.R.A. sec. 463, requiriendo de las corporaciones extranjeras que dieran expresamente su consentimiento irrevocable a ser

demandadas ante los tribunales de Puerto Rico y autorizar al Superintendente de Seguro para recibir emplazamientos a nombre de ellas. Siguiendo las normas establecidas en *Hess* v. *Pawloski*, supra, las Reglas de Procedimiento Civil de 1958 incorporaron el consentimiento implícito del conductor de automóviles no residente estableciendo que ". . . el manejo de un vehículo de motor en Puerto Rico por una persona que no sea residente . . . equivaldrá a la designación del Secretario de Estado como su agente para recibir emplazamientos . . . y significará su consentimiento para que cualquier diligencia judicial así notificada tenga la misma fuerza legal y validez de una notificación personal." Regla 4.7 de Procedimiento Civil.

Es en *International Shoe Co.* v. *Washington*, 326 U.S. 310 (1945), que verdaderamente se produce un enfoque doctrinal nuevo descartando la presencia física como fundamento exclusivo para el ejercicio de jurisdicción en una acción personal sobre no residentes. Ya no será necesario enquistar el ejercicio de jurisdicción en ficciones jurídicas. Ahora bastará que el demandado ausente de la jurisdicción mantenga ciertos contactos mínimos en el foro que permitan tramitar el pleito sin menoscabo de los principios tradicionales de juego limpio y justicia sustancial. "Históricamente" expresó la Corte Suprema en *International Shoe* "la jurisdicción de los tribunales para dictar sentencia *in personam* se basa en el poder *de facto* sobre la persona del demandado. De ahí que su presencia dentro de la jurisdicción territorial fuera un requisito para el dictamen de una sentencia que lo obligara personalmente. *Pennoyer* v. *Neff* . . . . Pero ahora que el *capias ad respondendum* ha dado paso al diligenciamiento personal del emplazamiento u otra forma de notificar el debido proceso de ley solo requiere para someter al demandado a una sentencia *in personam*, si no está presente en la jurisdicción, que él tenga en ella ciertos contactos mínimos en forma tal que el

pleito no quebrante 'las nociones tradicionales del juego limpio y justicia sustancial'." A la pág. 316.

Esta reconceptualización de los fundamentos de la jurisdicción abre las puertas del debido proceso de ley a diversos estatutos para extender la jurisdicción de los tribunales más allá de las fronteras del foro.

No obstante, la nueva perspectiva doctrinal no proscribe del todo las restricciones al ejercicio de jurisdicción sobre demandados no residentes. Así se advierte en *Hanson* v. *Denckla*, 357 U.S. 235, 251 (1958):

". . . Pero es un error asumir que esta tendencia presagia la desaparición eventual de las restricciones a la jurisdicción personal de las cortes estatales. . . . Estas restricciones son algo más que una garantía de inmunidad a litigar en un foro distante o inconveniente. Ellas son consecuencia de las limitaciones territoriales del poder de los estados. No importa cuan mínimo sea el peso de defenderse en un tribunal extranjero, un demandado no puede ser traído a pleito a menos que tenga contactos mínimos con el Estado que es pre-requisito para el ejercicio de jurisdicción sobre él. Véase *International Shoe Co.* v. *Washington*, 326 U.S. 310."

El *caveat* parece innecesario puesto que *International Shoe Co.* específicamente negó validez a las sentencias personales contra demandados ausentes que no tuvieran contactos, nexos o algún tipo de relación con el estado. "Dicha cláusula" se dijo en *International Shoe Co.*, refiriéndose a la cláusula del debido proceso de ley "no concibe que un estado pueda imponer una sentencia personal contra un individuo o corporación con la cual el estado no tenga contactos, nexos o relación alguna." Cf. *Pennoyer* v. *Neff*, a la pág. 319.

En Puerto Rico se enmendó la Regla 4.7 de Procedimiento Civil en el 1965 para ampliar la jurisdicción sobre personas no residentes, siguiendo el patrón del derecho procesal civil del Estado de Nueva York. Ley Núm. 105 de 28 de junio de 1965, 32 L.P.R.A. Ap. II, Regla 4.7; *Diario de Sesiones de 1965* a la pág. 1784; Informe de las Comisiones de Comercio

y Jurídico Civil del Senado, *Diario de Sesiones de 1965* a la pág. 1784. (¹)

.Tuvimos la oportunidad de interpretar esta nueva expansión de la jurisdicción del tribunal en *A. H. Thomas Co.* v. *Tribunal Superior,* 98 D.P.R. 883 (1970), adoptando la corriente doctrinal generada por *International Shoe Co.* pero reduciendo un poco su amplia perspectiva al requerir—siguiendo a *Hanson* v. *Denckla,* supra—que el contacto con nuestra jurisdicción resulte de un acto afirmativo mediante el cual deliberadamente el demandado se aproveche de las ventajas que ofrece nuestro foro invocando los beneficios y

---

(¹) La Regla 4.7, según quedó enmendada por la mencionada Ley de 1965, lee:

*Regla 4.7 Emplazamiento Sustituto*

"(a) Cuando la persona a ser emplazada no se encontrare en Puerto Rico, el Tribunal General de Justicia de Puerto Rico tendrá jurisdicción personal sobre dicho no residente, como si se tratare de un residente del Estado Libre Asociado de Puerto Rico, si el pleito o reclamación surgiere como resultado de lo siguiente:

(1) Realizare por sí o por su agente, transacciones de negocio dentro de Puerto Rico; o

(2) Ejecutare, por sí o por su agente, actos torticeros dentro de Puerto Rico; o

(3) Tuviere un accidente mientras, por sí o por su agente, manejare un vehículo de motor en Puerto Rico; o

(4) Tuviere un accidente en Puerto Rico en la operación, por sí o por su agente, de un negocio de transportación de pasajeros o carga en Puerto Rico o entre Puerto Rico y Estados Unidos o entre Puerto Rico y un país extranjero o el accidente ocurriere fuera de Puerto Rico en la operación de dicho negocio cuando el contrato se hubiere otorgado en Puerto Rico; [o]

(5) Fuere dueño, o por sí, o por su agente, usare o poseyere bienes inmuebles sitos en Puerto Rico.

(b) En tales casos se presumirá incontrovertiblemente que el demandado ha designado al Secretario de Estado de Puerto Rico como su agente, y significará su consentimiento para que aquél reciba emplazamientos, demandas o notificaciones judiciales y a tales efectos copia del emplazamiento y de la demanda se entregará al Secretario de Estado o a la persona designada por éste, y el demandante remitirá inmediatamente al demandado copia de estos documentos por correo certificado con acuse de recibo. Cualquier diligencia judicial así notificada tendrá la misma fuerza legal y validez de una notificación personal."

la protección que brindan las leyes de Puerto Rico. No definimos el concepto de "contactos mínimos" sino que seguimos las guías generales que surgen de *International Shoe Co.; Travelers Health Assn.* v. *Virginia,* 339 U.S. 643 (1950); *Perking* v. *Benguet Consol. Min. Co.,* 342 U.S. 437 (1952); *McGee* v. *International Life Ins. Co.,* 355 U.S. 220 (1957) y *Hanson* v. *Denckla,* supra.

A la luz de estos desarrollos doctrinales consideremos ahora la resolución recurrida. Se recordará que el tribunal de instancia se declaró sin jurisdicción desestimando la demanda porque el emplazamiento no fue diligenciado conforme lo dispuesto por la Regla 4.7 de Procedimiento Civil.

■ La Regla 4.7 de Procedimiento Civil confiere expresamente jurisdicción personal al tribunal de instancia sobre demandados ausentes cuando el pleito surgiere como resultado de éste o sus agentes realizaran algunos de los siguientes actos en Puerto Rico: 1) transacciones de negocio 2) actos torticeros 3) accidentes de automóvil 4) accidentes en el negocio de transportación o carga, etc. y 5) ser dueño, usar o poseer bienes inmuebles sitos en Puerto Rico.([2]) Aunque la sentencia recurrida no indica bajo cuáles de estos supuestos ubica el caso de autos, podemos, sin embargo, deducir de sus razonamientos que el tribunal de instancia intentó encajarlo en el primero, o sea, realizar por sí o por su agente transacciones de negocio dentro de Puerto Rico.

La Regla 4.7 no provee una definición del concepto "transacciones de negocio" ni su historial legislativo da luz sobre su alcance, limitándose el mismo a indicarnos que esta regla está basada en la legislación de derecho procesal de Nueva York. *Diario de Sesiones de 1965,* supra.

El término "transacción", según traducido del inglés "transaction", significa gestión o trámite. Robb, *Diccionario de Términos Legales,* pág. 221, Editorial Limusa, Wiley

---

([2]) El texto de la Regla 4.7 aparece en el escolio 1, *supra.*

S. A., (Méjico 1969). Usualmente dicho término se usa en el idioma inglés para indicar que se ha llevado a cabo un acto o se ha hecho una gestión sobre algo. *Black's Law Dictionary*, *op. cit.*, pág. 1668, 87 C.J.S. *Transaction*, pág. 888. Por otro lado, el término "negocios" es uno amplio que incluye tanto transacciones comerciales como de otra índole. La *Enciclopedia Jurídica Española* nos dice al respecto: ". . . Como dice Blanco Constans, *negocio* es un término genérico con el que se expresa cualquier empleo, ocupación lucrativa o de interés. Explicando el mismo autor la diferencia entre *negocio* y *comercio*, dice que negocio es el género y el comercio es la especie . . . ." 23 *Enciclopedia de Revista Jurídica* 354. *Black's Law Dictionary* nos dice que el término "negocio" no tiene una definición legal específica y que puede abarcar diversas actividades. (Cuarta edición pág. 248.)

El estatuto de Nueva York contiene un concepto prácticamente idéntico a nuestra Regla 4.7, el de *"transact any business within the state," Civil Practice Law and Rules* sec. 302, 7B McKinney's *Consolidated Law of New York* 58. Allí se ha resuelto que dicho concepto no se limita a transacciones comerciales sino que también incluye transacciones que no tienen propósito de lucro, como lo es un acuerdo sobre alimentos. *Kochental* v. *Kochental*, 282 N.Y.S. 36 (1967). Igualmente se ha resuelto en Maryland interpretando la mencionada sección 302 del C.P.L.R. de New York, *Van Wagenberg* v. *Van Wagenberg*, 215 A.2d 812 (1966) y en Massachusetts, *Spitz* v. *Spitz*, 16 Legalite 278 (resolución 6 de marzo de 1965).(3)

El propósito de la enmienda introducida a la Regla 4.7 fue precisamente el de "incorporar a nuestra legislación procesal la tendencia moderna que es la de ampliar la jurisdicción de los tribunales estatales sobre personas no residentes del foro." *Diario de Sesiones*, supra, pág. 1984. No vemos ninguna

---

(3) Damos la cita que aparece en *Kochental* v. *Kochental*, supra.

razón válida para contravenir el propósito liberador de la Regla 4.7 limitando el concepto "transacciones de negocio" a únicamente transacciones comerciales, y en consecuencia, excluir las gestiones sobre alimentos y de otra índole, del procedimiento sencillo y económico que provee dicha Regla para el emplazamiento de personas ausentes de la jurisdicción. Dicho procedimiento consiste en notificar el emplazamiento al Secretario de Estado de Puerto Rico y remitirle al demandado una copia por correo certificado.

El Estado Libre Asociado de Puerto Rico tiene un legítimo interés en el bienestar de los menores. En atención a este interés el Código Civil preceptúa el derecho de los hijos a recibir alimentos, Art. 118, 31 L.P.R.A. sec. 466, el deber de los padres a proveerlos, Art. 143, 31 L.P.R.A. sec. 562; el Código Penal tipifica como delito el incumplimiento de la obligación alimenticia, 33 L.P.R.A. sec. 4241; y para facilitar la ejecución judicial de ese derecho se adoptó en Puerto Rico la Ley de Reciprocidad para la Ejecución de Obligaciones de Alimentos, Ley Núm. 71 de 20 de junio de 1956, 32 L.P.R.A. sec. 3311 y sig. Este interés legítimo del Estado quedaría mermado si excluyéramos del término "transacciones de negocio" las gestiones relacionadas con los alimentos o el bienestar de los menores. No parece razonable que si el legislador se preocupó por incluir en la Regla 4.7 el accidente ocasionado por el manejo de un vehículo de motor y hasta un simple acto torticero, fuera a excluir del manto protector de nuestros tribunales el bienestar de los menores cuando, efectivamente, se hubieren hecho por el demandado ausente gestiones en relación con el mismo.

■ A tenor con estos razonamientos concluimos que el término "transacciones de negocio" de la Regla 4.7 es uno abarcador que no está limitado a transacciones comerciales sino que comprende gestiones de diversa índole, incluyendo gestiones relacionadas con el bienestar de menores, como son

las pensiones alimenticias, la reglamentación de las relaciones paterno filiales y la custodia.

La interpretación que aquí damos a la Regla 4.7 satisface plenamente los reclamos del debido proceso de ley, cuyo criterio de validación se expone en la doctrina de contactos mínimos. El requisito primordial de esta doctrina, como ya vimos, es que los contactos sean suficientes para no quebrantar las nociones tradicionales de juego limpio y justicia sustancial. En forma alguna requiere que los contactos tengan como propósito el lucro o una actividad comercial. Como expresamos en *A. H. Thomas Co.* v. *Tribunal Superior*, supra, basta que el contacto con la jurisdicción resulte de un acto afirmativo mediante el cual el demandado se haya aprovechado deliberadamente de las ventajas que ofrece el foro, invocando así los beneficios y la protección que brindan las leyes del Estado.

■ La acción personal en cobro de dinero por concepto de alimentos adeudados instada por la peticionaria podría cobijarse pues bajo la jurisdicción personal conferida por la Regla 4.7 (a) (1), si es que, en efecto, surge como resultado de una "transacción de negocio."

Hemos examinado detenidamente los autos y estamos convencidos de que, efectivamente, la causa de acción ejercitada por la peticionaria para el cobro de las pensiones adeudadas surgió como resultado de una "transacción de negocios" con el demandado. Aparece de los autos que las pensiones alimenticias adeudadas se originaron en el pleito de divorcio entre las partes ante el Tribunal Superior, Sala de Caguas, CS69-2964.

El expediente de dicho caso revela los siguientes hechos:

1. El 6 de octubre de 1969 se decretó el divorcio entre las partes fijándose una pensión alimenticia de $320.00 mensuales para los cinco hijos habidos en el matrimonio. El demandado Marcos A. Zequeira compareció a la vista del divorcio representado por abogado.

2. El 12 de julio de 1972 Zequeira compareció ante la Sala de Caguas en un escrito titulado Moción Solicitando Establecer

las Relaciones Paterno Filiales. La peticionaria se opuso a dicha moción y solicitó al tribunal que se ordenara al demandado pagar las pensiones alimenticias adeudadas que a ese momento ascendían a $4,120.00 y que se aumentara la pensión alimenticia a $1,500.00. Aparece de dicha moción que la pensión alimenticia se había aumentado a $640.00 el 18 de diciembre de 1970 *por estipulación de las partes.*

3. El 20 de marzo de 1973 Zequeira solicitó del tribunal que se le permitiera tener bajo su custodia sus hijos durante el verano y se opuso al aumento de la pensión alimenticia.

4. En la vista celebrada el 30 de abril de 1973 *Zequeira estipuló* a través de su abogado que la deuda ascendía a $3,120.00 los cuales él pagaría en o antes del 30 de abril de 1973.

5. El 24 de mayo de 1973 se aumentó la pensión a $1,000.00. Zequeira *solicitó,* posteriormente que se reconsiderara dicho aumento. A tenor con dicha moción el tribunal redujo la pensión a $900.00.

6. El 19 de julio de 1973 la peticionaria solicitó que se declarara a Zequeira incurso en desacato por no haber honrado las pensiones y por no haber enviado al tribunal copia certificada de su planilla de contribución sobre ingresos según se había comprometido con el tribunal. Aparecen mociones de desacato fechadas el 11 de septiembre de 1973 y el 19 de octubre de 1973. El 25 de octubre el tribunal le ordenó, so pena de desacato, que remitiera la copia certificada de la planilla en o antes del 14 de septiembre de 1973, y, en su defecto, que compareciera el 30 de noviembre a exponer las razones por las cuales no debía ser declarado incurso en desacato. El 13 de noviembre comparece especialmente Zequeira a impugnar la jurisdicción del tribunal con respecto a la orden de desacato. El 30 de noviembre de 1973 el tribunal de instancia declaró no ha lugar a la falta de jurisdicción y apercibió a Zequeira de que su negativa a someter sus planillas podía dar base al tribunal para hacer inferencia razonable sobre el monto de la pensión.

7. El 27 de marzo de 1974 el tribunal, en vista de la negativa de Zequeira a someter sus planillas de contribución sobre ingresos, y, tomando en consideración el aumento extraordinario en el costo de la vida, aumentó la pensión a $1,200.00 mensuales.

8. El 24 de abril de 1974 Zequeira *solicitó* ante este Tribunal la expedición de un auto de *certiorari* para revisar el aumento

de la pensión a $1,200.00. Nos negamos a expedir el auto el 9 de mayo de 1974, O-74-155.

Surge palmariamente de los anteriores hechos múltiples gestiones y trámites del demandado Zequeira que constituyen el haber realizado transacciones de negocios en este foro, bajo la Regla 4.7. Se amparó bajo la jurisdicción del tribunal de instancia en dos ocasiones, el 12 de julio de 1972 y el 20 de marzo de 1973, solicitando el establecimiento de las relaciones paterno filiales y que se le concediera la custodia de los hijos durante el verano de 1973. En dos ocasiones también hizo estipulaciones bajo la protección del tribunal, una, el 18 de diciembre de 1970 acordando con la peticionaria el aumento de la pensión a $640.00, y, otra, el 30 de abril de 1973, estipulando que la deuda ascendía a $3,120.00 y que lo pagaría en o antes del 30 de abril de 1973. Gestionó la reducción de la pensión que había sido aumentada en $1,000.00. Es precisamente en virtud de su solicitud al tribunal que se reduce la pensión a $900.00 el 10 de julio de 1973. Más aún, compareció ante este Tribunal en solicitud de *certiorari* para revisar el aumento de la pensión a $1,200.00. Todas estas gestiones las hizo Zequeira siendo residente de Miami, Florida.

Cualesquiera de los actos mencionados por sí solos son suficientes bajo la doctrina de contactos mínimos para reconocerle jurisdicción personal al tribunal de instancia ya que cada uno de ellos constituye un acto afirmativo en que el demandado Zequeira deliberadamente se aprovecha de las ventajas que ofrece nuestro foro e invoca los beneficios y protección de nuestros tribunales. Con mayor razón si se consideran en conjunto.

No obstante, el tribunal de instancia desestimó la demanda por el fundamento de que no se había dado cumplimiento a la Regla 4.7. Aparece, sin embargo, del récord que el 8 de abril de 1975 la peticionaria notificó el emplazamiento y

la demanda al Secretario de Estado y que envió copia del emplazamiento y la demanda por correo certificado al demandado Zequeira, conforme lo dispone la Regla 4.7. Pero si esto fuera poco, y evidentemente motivado por la obstinada desobediencia de Zequeira a las órdenes del tribunal de instancia, la peticionaria también le notificó otro emplazamiento bajo la Regla 4.3, por medio de un alguacil del Condado de Dade, Florida. Mal podría quejarse Zequeira de este diligenciamiento que por ser personal cumple con mayor eficacia su propósito de enterarlo del pleito, y por lo mismo, da mayor garantía al debido procedimiento de ley que el emplazamiento sustituto.

*En vista de lo anterior se dictará sentencia revocando la resolución dictada por el tribunal de instancia declarándose sin jurisdicción y se ordena la continuación de los procedimientos.*

El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Martín, concurren en el resultado. El Juez Asociado Señor Díaz Cruz concurre con opinión separada con la cual concurren el Juez Presidente Señor Trías Monge y los Jueces Asociados Señores Dávila, Martín, Irizarry Yunqué y Negrón García.

—O—

Opinión concurrente del Juez Asociado Señor Díaz Cruz en la cual concurren el Juez Presidente Señor Trías Monge y los Jueces Asociados Señores Dávila, Martín, Irizarry Yunqué y Negrón García.

San Juan, Puerto Rico, a 6 de noviembre de 1975

■ Concurro con la opinión circulada pero deseo destacar un fundamento legal para sostener la jurisdicción del Tribunal Superior de Puerto Rico sobre la persona del demandado Dr. Zequeira con más relieve que el elaborado en orden a la Regla 4.7 de Procedimiento Civil; cuál es el princi-

pio, en divorcio y sus acciones derivadas de alimentos y custodia, de que la corte que originalmente adquirió jurisdicción sobre las partes la retiene para ulteriores providencias, sin que para ello sea necesaria la residencia continua dentro de su territorio o demarcación.

Es de la esencia de la función judicial que un tribunal tenga el poder de hacer respetar sus órdenes y sentencias. Una vez que un estado obtiene jurisdicción sobre una parte en el pleito, la misma continúa a través de todos los procedimientos que arranquen de la causa de acción original. Se dará a la parte notificación y razonable oportunidad de ser oída en cada paso del procedimiento. Aún faltando una base jurisdiccional continua la jurisdicción, una vez establecida, sigue vinculando al demandado al menos en cuanto a procedimientos derivados de la causa de acción original reservándose a la corte jurisdicción para modificar una pensión alimenticia u orden de custodia sin importar el tiempo transcurrido desde que se dictó hasta que se pidió la modificación.[1] American Law Institute, *Restatement, Conflict of Laws*, 2d Vol. 1, sec. 26, págs. 114–15, Ed. 1971; Cheatham, Griswold, Reese & Rosenberg, *Conflict of Laws*, pág. 176, Quinta Edición (1964); Leflar, *Conflict of Laws*, Sec. 32, pág. 52, Ed. 1959.

El médico demandado ha sido un litigante regular y hasta asiduo ante el Tribunal Superior de Puerto Rico que decretó su divorcio en 1969 y al que ha vuelto a comparecer en diversos incidentes de alimentos y custodia de hijos y en solicitud de remedio en cinco ocasiones adicionales que se extienden desde el 12 de julio de 1972 hasta el 24 de mayo de 1973, optando por impugnar la jurisdicción en noviembre de 1973 como recurso final opuesto a la prevención de desacato, para evadir el castigo de su contumaz incumpli-

---

[1] A la pág. 115 de *Restatement, Conflict of Laws*, 2d, citado, el ejemplo #1 presenta el caso con hechos iguales al de autos, con la excepción de que en aquél habían transcurrido 20 años del divorcio.

miento con las órdenes sobre alimentos. Tan reciente es el vínculo de este demandado con Puerto Rico que denegada su objeción a la jurisdicción y aumentada la pensión el 27 de marzo de 1974, recurrió en abril siguiente a este Tribunal Supremo que denegó *certiorari* en mayo de 1974.

El Tribunal Superior de Puerto Rico conserva y mantiene la jurisdicción sobre el Dr. Zequeira desde que adjudicó su divorcio en el año 1969 por sumisión expresa y reiterada de dicho demandado. La Regla 4.3, por tanto, es el más directo medio procesal para traerlo al foro. Ningún sistema de enjuiciamiento puede tolerar que una persona que por años ha venido litigando en un foro que no es el de su residencia, una causa de acción y sus incidentes derivados, al recibir una decisión adversa pueda oponer su domicilio como escudo. La demanda en cobro de alimentos vencidos e impagados es un episodio más en la extendida litigación que hemos relacionado, por lo que todo cuanto exige el debido proceso es que se le notifique la reclamación para cuyo caso provee la Regla 4.3 de Procedimiento Civil:

". . . En el caso de demandados ausentes de Puerto Rico, el emplazamiento podrá ser diligenciado por un alguacil de la jurisdicción donde se haga la entrega o por un abogado admitido a la práctica de la profesión en dicha jurisdicción o en Puerto Rico, o por una persona designada por el tribunal para ese propósito."

Fue propia y correcta la actuación de la demandante valiéndose de dicho método de notificación personal, el más eficaz y confiable para emplazar; a pesar de que utilizó también la alternativa de emplazamiento sustituto dispuesta en la Regla 4.7.