**COMMODITIES WORLD INTERNATIONAL CORPORATION,**
Plaintiff,

v.

**ROYAL MILC, INC., the Fidelity and Casualty Company of New York, and Puerto Rico Maritime Shipping Authority, Defendants.**

Civ. No. 77–59.

United States District Court,
Puerto Rico.

Nov. 29, 1977.

Antonio Moreda Toledo, San Juan, P.R., for plaintiff.

Jiménez & Fusté, San Juan, P.R., for P.R. Maritime Shipping Authority.

Fiddler, González & Rodríguez, San Juan, P.R., for Royal Milc, Inc.

Jorge Bermúdez Torregrosa, Hartzell, Ydrach, Mellado, Santiago, Perez & Novas, San Juan, P.R., for Fidelity & Cas. Co.

## OPINION AND ORDER

TOLEDO, Chief Judge.

This case is now before this Court upon a motion to dismiss for lack of *in personam*

jurisdiction with respect to codefendant Royal Milc, Inc. Plaintiff and Royal Milc have submitted affidavits and legal memoranda in support of their respective positions and in rebuttal. The other codefendants have answered the complaint and thus do not question this Court's *in personam* jurisdiction with respect to themselves.

Subject matter jurisdiction of this Court is claimed under Title 28, United States Code, Section 1332 for reasons of diversity of citizenship and plaintiff's claim in excess of $10,000.00. Plaintiff requested and obtained permission of this Court to serve process on codefendant Royal Milc pursuant to Rule 4(e) of the Federal Rules of Civil Procedure which authorizes service, in this instance, under the long-arm statute of the Commonwealth of Puerto Rico as set forth in Rule 4.7 of Civil Procedure. The record indicates that the procedural requirements of service under said Rule 4.7 were properly satisfied including notice by registered mail addressed to Royal Milc at its principal place of business in Minnesota. Whereupon Royal Milc, expressly without submitting itself to the jurisdiction of this Court, moved for dismissal of the complaint with respect to itself for lack of *in personam* jurisdiction.

By this action plaintiff seeks to recover from codefendants the value of certain goods purchased from Royal Milc plus damages resulting from alleged loss of business and injury to its reputation. We do not, of course, reach the merits of the controversy at this time. We merely determine whether codefendant Royal Milc is amenable to suit in this jurisdiction, following the established doctrines which govern the reach of state long-arm statutes.

From the allegations and affidavits the following facts emerge essentially uncontroverted at this stage of the proceedings.

Plaintiff, a Florida corporation with its principal place of business in that State, purchased 1,800 bags of animal feed from Royal Milc, Inc., a Minnesota Corporation with its principal place of business in that State, and allegedly the manufacturer[1] of the said product. Royal Milc was to place the bags of animal feed so purchased in a sealed container van to be delivered to the port of embarcation at Baltimore, Maryland, consigned to a freight forwarder at said port.[2] At Baltimore the container was placed aboard a vessel owned or operated by codefendant Puerto Rico Maritime Shipping Authority, a Puerto Rico public corporation, for shipment to San Juan, Puerto Rico. The shipment was at least partially insured under an insurance policy issued by codefendant the Fidelity and Casualty Company of New York, an insurance company licensed by New York. The animal feed arrived at San Juan, Puerto Rico, in a condition determined to be unfit for consumption as intended.

Prior to the transaction described, plaintiff had procured and obtained from the Department of Agriculture of the Commonwealth of Puerto Rico a license or permit to introduce the particular animal feed here involved into the Puerto Rican market. The said license or permit number appears printed in the upper portion of the labels, printed in the Spanish language, supplied by plaintiff to Royal Milc to be affixed to each bag of animal feed.[3]

Royal Milc is not licensed or otherwise authorized to do business in Puerto Rico.

---

**1.** Royal Milc denies that it manufactures the said product, but admits that it establishes the formula and maintains quality control of the product as manufactured by an independent contractor. It further alleges that it does not exercise actual supervision over the production, labeling or shipping process. Affidavit of Laverne M. Schugel, paragraphs 5 and 6, October 27, 1977. However, Royal Milc appears as the shipper under the bill of lading. Id., Exhibit C.

**2.** Cf. bill of lading, Exhibit C to Schugel affidavit, supra.

**3.** Royal Milc admits to the receipt of said labels from plaintiff but alleges that "in the normal course of its business in this respect, defendant Royal Milc, Inc., immediately upon receipt in bulk of the shipping labels from plaintiff and without reviewing them, forwarded the same to (the independent contractor) for attachment to the appropriate product bags". Schugel affidavit, supra, paragraph 8.

Royal Milc conducts no business in Puerto Rico either directly or through any appointed agent. It maintains no office or mailing address in Puerto Rico, nor any employees, agents, representatives or inventories, and it does not own or have any beneficial interest, directly or indirectly, in any real property located in Puerto Rico. The business transactions between plaintiff and Royal Milc, insofar as they relate to the present controversy, all were conducted and effected outside of Puerto Rico.

There exists a controversy as to whether Royal Milc had prior knowledge as to the ultimate destination of the goods sold to plaintiff. Plaintiff alleges that Royal Milc knew the goods in question were destined for use in the Puerto Rican market.[4] Royal Milc denies any such knowledge.[5] At this stage of the proceedings it is reasonable to infer, and we so do, that Royal Milc did have, or at least should have had constructive knowledge as to the ultimate destination of the goods purchased by plaintiff.

Business relationships do not exist in a vacuum. Certainly Royal Milc knew enough about plaintiff to recognize the basic nature of plaintiff's business as a middleman or intermediary between the manufacturer and the ultimate consumer. The shipping arrangements alone would put a reasonable person on notice as to the nature of the transaction. Surely there must have been some known purpose to the business relationship between the parties and it is eminently reasonable to assume that there existed between them certain mutual undertakings as to the nature and quality of the product, volume of business and markets to be serviced. The orderly conduct of a business demands no less.

But in the case at bar there is more. Plaintiff's petition for a license or permit from the Department of Agriculture of the Commonwealth of Puerto Rico could not, or at least should not, have gone unnoticed by Royal Milc. Undoubtedly said petition must have relied at least in part on information about and derived from the purported manufacturer, Royal Milc. It would seem at least imprudent for Royal Milc to have no knowledge whatsoever as to the contents or significance of the label required to be affixed to each bag of animal feed. Apart from reasonable and normal curiosity as to the label affixed to one's product, minimal diligence in the conduct of a business would seem to require that the manufacturer ascertain that the labels affixed to its products do not express falsehoods and that in all material aspects there is compliance with the law.

We cannot accept the contention that Royal Milc blindly affixed particular labels to its products, selling and shipping these with no knowledge as to their ultimate destination and use. A contrary conclusion would require a finding of the utmost carelessness in the conduct of the vendor's business or of a purposeful and deceitful withholding of information by the intermediary buyer. There is not a scintilla of evidence in the record to support either finding.

Thus we come face to face with the ultimate reach of the Commonwealth of Puerto Rico's long-arm statute and, particularly, in circumstances such as we have in the instant case. No claim of lack of notice is made, but rather that in the given circumstances Royal Milc lies beyond the reach of Puerto Rico's long-arm statute thus precluding this Court from acquiring *in personam* jurisdiction over said defendant.

Puerto Rico's long-arm statute permits the exercise of jurisdiction to the fullest extent of constitutional authority whose limits are ultimately set by our traditional conception of fair play and substantial justice. *Vencedor Manufacturing Co. v. Gougler Industries, Inc.*, 557 F.2d 886 (1st Cir., 1977); *Birriel Correa v. Chrysler Corporation*, D.C.P.R. Civil No. 76–770, August 1, 1977; *Medina v. Tribunal*, 104 D.P.R. 346 (1975); *A. H. Thomas Co. v. Superior Court*, 98 P.R.R. 864 (1970); *Integrated Ind., Inc. v. Continental Mill Co.*, 385 F.Supp. 883

---

4. Affidavit of Sergio Gutierrez, September 7, 1977, par. 4.

5. Schugel affidavit, supra, paragraphs 10, 11 and 12.

(D.C.P.R., 1974); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). See also Legislature of Puerto Rico, Journal of Proceedings, 1784 (1965). It has been claimed that Puerto Rico's long-arm statute was taken from the law of New York, before it was amended, and that therefore it should be interpreted as the Supreme Court of New York has held that its law was not intended to go as far as the United States Constitution allows. But the New York statute in turn was based on the Illinois long-arm statute which has been interpreted to extend jurisdiction to the maximum limits permitted by the Constitution. *Birriel Correa v. Chrysler Corporation*, supra; *Gray v. American Radiator & Standard Sanitary Corporation*, 22 Ill.2d 432, 176 N.E.2d 761 (1961). *Gray* held that jurisdiction extends, under the tortious act provision of the Illinois long-arm statute, virtually identical to Puerto Rico's law, to a manufacturer whose only contact with the forum state was that a defective component part which it manufactured was included in a water heater which was sold in Illinois where it exploded causing injuries to the plaintiff in Illinois. The tortious act was said to have been committed in Illinois because the injury was sustained there. The *Gray* doctrine has been adopted by most of the jurisdictions with a similar long-arm statute. *Fulton v. Chicago Rock Island & Pacific Railroad Co.*, 481 F.2d 326, 331 (8th Cir., 1973); *Duple Motor Bodies, Ltd. v. Hollingsworth*, 417 F.2d 231 (9th Cir., 1969); *Consolidated Laboratories, Inc. v. Shandon Scientific Co.*, 384 F.2d 797 (7th Cir., 1967); *Hitt v. Nissan Motor Co., Ltd.*, 399 F.Supp. 838 (S.D.Fla., 1975); *Kroger Co. v. Adkins Transfer Co.*, 284 F.Supp. 371 (M.D.Tenn., 1968); *Hiersche v. Seamless Rubber Co.*, 225 F.Supp. 682 (D.C.Or., 1963). The *Gray* doctrine focuses primarily on actions in tort and particularly on product liability claims.

The parties in this controversy have presented extensive arguments as to the underlying nature of this action. Plaintiff insists that the complaint is framed as an action in tort presumably to invoke the *Gray* doctrine and the seemingly more liberal interpretation as to the permissible reach of a state's long-arm statute. Royal Milc, on the other hand, insists that this is an action on a contract, arguing that any breach of duty herein claimed must be grounded upon a breach of contract between the parties. Thus Royal Milc seeks to invoke the contract rule which presumably is more restrictive than the tort rule set forth in *Gray* as to the permissible reach of a state's long-arm statute.

■ In *Vencedor v. Gougler*, supra, the Court of Appeals for the First Circuit rejects the thesis that suits sounding in tort, and especially product liability actions, can be maintained on the basis of more attenuated contacts than can contract actions. It rejects the "categorical" approach to jurisdiction wherein jurisdictional constraints are stretched in certain classes of suits and shrunk in others:

> "We see no national or neutral principle that makes inapplicable the tort cases we have relied upon. . . . To vary the minimum contacts needed for jurisdiction according to the character of the suit would lead plaintiffs into disingenuous manipulation of their pleadings, and it would plunge the courts into ever more difficult refinements of the categories." At page 894.

Thus we hold that the governing rule is not colored by the nature of the suit but rather by the existence of sufficient contacts with the forum state, purposefully made by the foreign person and related to the cause of action, to justify in the context of fair play and substantial justice its amenability to suit in a foreign state. We therefore must determine the scope of the minimum contacts sufficient to sustain *in personam* jurisdiction over a foreign corporation and whether such minimum contacts exist in this case with respect to Royal Milc.

The realities of modern commercial transactions dictate that modern concepts of jurisdiction be considered for the purpose of enlightened handling of disputes arising from modern conditions and transactions. In response to these realities the require-

ments for personal jurisdiction over non-residents have evolved from the rigid rule of *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1878), to the flexible standard of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Hanson v. Denkla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). *International Shoe* established the test of minimum contacts which has been consistently applied with varying refinements ever since. The Supreme Court of Puerto Rico expressly adopted the *International Shoe* doctrine within the context of *Hanson* in *A. H. Thomas Co. v. Superior Court*, 98 P.R.R. 864 (1970) stating, *inter alia*, that the principal requirement of the minimum contacts doctrine is that the contacts be sufficient within the meaning of the concepts of fair play and substantial justice and the result of an affirmative act on the part of the foreign person. *Medina v. Tribunal*, 104 D.P.R. 346, 357 (1975).

■ The sufficiency of the contacts has been upheld where there has been direct or indirect solicitation of business in the forum state. *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Direct solicitation is not relevant to the case at bar, nor can we apply the national advertising standards to find indirect solicitation. "Solicitation is not, however, limited to advertising. It is the affirmative seeking of business." *Vencedor Manufacturing Co. v. Gougler Industries, Inc.*, 557 F.2d 886, 891 (1st Cir., 1977). The establishment of a business relationship with a middleman for the distribution of one's products is a widely used mechanism of obtaining sales and thus can be accommodated easily in the concept of indirect solicitation. It becomes obvious if the middleman is assigned some territory, a circumstance which has not been alleged in this case. But it is no less existent if the relationship does not define a particular territory because in such circumstances the seller is merely conceding an unlimited territorial scope to his middleman. In either event the middleman is expected to solicit sales of the seller's products and wherever he performs such activities we have indirect

solicitation by the original vendor. The record does not expressly indicate whether plaintiff actively solicited sales of Royal Milc's products in Puerto Rico, but because business transactions do not occur in a vacuum it is reasonable to infer that plaintiff solicited such sales in the Puerto Rican market. Certainly there is no evidence in the record to suggest that Royal Milc took any action to prevent plaintiff from offering its products for sale in Puerto Rico. Solicitation of business meets the *Hanson* standard that the defendant's contacts with the forum be voluntary in some meaningful sense. *Vencedor v. Gougler*, supra, at page 891. "After *McGee* it seems fair to say that one who solicits in a state may be sued there if the transaction he has sought goes sour". Id. at page 891. It is also true that the absence of solicitation is not fatal to an assertion of jurisdiction over a defendant corporation. Such absence does not cover its operations with a mantle of immunity. *Shealy v. Challenger Manufacturing Co.*, 304 F.2d 102, 104 (4th Cir., 1962).

Indirect solicitation seems to require some constructive knowledge as to its reach in order to satisfy *Hanson's* jurisdictional prerequisite of some sort of voluntary association with the forum. We have already stated that Royal Milc had constructive knowledge as to the destination of the animal feed sold to plaintiff.

A more important test of sufficient contacts with the forum state is found in the purposeful availment doctrine. This is the affirmative act requirement stated in *A. H. Thomas*, supra, and *Medina*. In this case it has two aspects, which we examine separately. One may be described as "foreseeability" and the other as availment of the forum state's laws.

■ Foreseeability that a shipped product may eventually reach a state satisfies the requirement that the defendant purposefully avails itself of conducting activities within the forum state. *King v. Hailey Chevrolet Co.*, 462 F.2d 63 (6th Cir., 1972); *Dawkins v. White Products Corp.*, 443 F.2d 589 (5th Cir., 1971); *Scafati v. Bayerische*

*Motoren Werke, AG*, 53 F.R.D. 256 (D.C.Pa. 1971). In *Vencedor* the concept of foreseeability is expressed or defined by the nature of the business of the defendant:

> "If *International Shoe* stands for anything, however, it is that a truly interstate business may not shield itself from suit by a careful but formalistic structuring of its business dealings."

The nature of the business is discovered by the type of products, mode of shipping and accepting orders, network of sales outlets or middlemen and other factors. In this case Royal Milc accepted labels from its middlemen to be affixed to the products sold in the regular course of its business.[6] Its mode of shipment and the use of plaintiff as middleman strongly suggest that Royal Milc is engaged in a truly interstate business.

█ Put in a different way, the act by a corporation which will subject it to a foreign state's jurisdiction must be one which the corporation could know to have potential consequences in that state. *Deveny v. Rheem Manufacturing Co.*, 319 F.2d 124, 128 (2nd Cir., 1963). The act of selling to a middleman does not suffice to insulate a manufacturer from the *Deveny* doctrine, since he must clearly understand that he is not selling to an end user and, in fact, unless he imposes restrictions upon his middleman, he expands his horizons of amenability to any state since he willingly and knowingly enters into such an arrangement.

Foreseeability is an expression of prior knowledge. In *Eyerly Aircraft Co. v. Killian*, 414 F.2d 591 (5th Cir., 1969) the Court held, at page 596, that ". . . a corporation is answerable when it introduces its product into the stream of interstate commerce if it has reason to know or expect that its product would be brought into the state where the injury occurred." It would be incongruous to hold that knowledge, and thus foreseeability, is prevented by the mechanism of using a middleman for interstate distribution of a vendor's products. The presence of a middleman in the chain from manufacturer to end user cannot insu-

late the manufacturer from the consequences of his voluntary and purposeful entry into given jurisdictions with his products. In *J. Henrijean and Sons v. M. V. Bulk Enterprise*, 311 F.Supp. 417 (W.D. Mich., 1970), defendant transported steel from point A to point B and a different entity carried the steel to point C which became the forum state. The Court held that defendant's knowledge of the ultimate destination of the steel was sufficient to support jurisdiction in the forum state even though defendant had no other contact with that state.

A corollary element to foreseeability and knowledge is economic benefit. The reach of the long-arm statute has been held to include any person who derives an economic benefit from transactions occurring within the forum state. *Medina v. Tribunal*, 104 D.P.R. 346, 357 (1975). In *Vencedor*, supra, the Court expressed that "perhaps it is fair to impose the burden of distant litigation only on those who obtain significant benefits from frequent interstate transactions", at page 893. A single order has been held to be insufficient to sustain jurisdiction. *Whittaker Corporation v. United Aircraft Corporation*, 482 F.2d 1079 (1st Cir., 1973). The record does not indicate whether Royal Milc has made any other sales, directly or indirectly, into the Puerto Rican market. However, from plaintiff's allegation of damages and the existence of a specific license or permit issued by the Commonwealth of Puerto Rico, it is reasonable to infer that the transaction involved herein was not a single, isolated order, but rather a part of a continuous and systematic pattern of sales from which Royal Milc derived economic benefits.

█ The second aspect of purposeful availment deals with the use and protection of the forum state's laws. It seems that Royal Milc could not have sold its product in the Puerto Rican market without having first obtained the required license or permit from the Department of Agriculture of the Commonwealth of Puerto Rico. Presuma-

---

**6.** See note 3, supra.

bly this legal prerequisite is designed to establish and maintain certain product standards and it operates to exclude from this market any of Royal Milc's competitors who either fail to satisfy those standards or who do not seek the required license or permit. In that sense Royal Milc's products are protected by the laws of the Commonwealth of Puerto Rico and Royal Milc has specifically availed ,itself of both the protection and privilege to sell its product in this market.

In our view it does not matter who procured the license or in whose name it was issued. The license points to the product and it is essentially the product which qualifies or not for sale in the Puerto Rican market. Plaintiff's procurement and obtention of the license is irrelevant to the fact that Royal Milc purposefully availed itself and benefited ʻfrom the laws of the Commonwealth of Puerto Rico. Thus the procurement of the license, albeit through an intermediary, constitutes an affirmative act taken purposefully to invoke the privileges and protections of the laws of the Commonwealth of Puerto Rico and is, of itself, sufficient to sustain *in personam* jurisdiction over Royal Milc. Cf. *Medina v. Tribunal,* 104 D.P.R. 346, 353–354, 357 (1975); *A. H. Thomas Co. v. Superior Court,* 98 P.R.R. 883 (1970).

> ". . . to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).

> ". . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

█ Trial convenience is not the ruling consideration in jurisdiction cases. *Hanson v. Denckla,* 357 U.S. 235, 254, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). It is helpful, however, to ask where the largest number of witnesses are likely to reside, *Vencedor Manufacturing Co. v. Gougler Industries, Inc.,* supra at page 893, to consider whether the jurisdictional controversy involves an indispensable party, *Hanson,* supra, 357 U.S. at page 254, 78 S.Ct. 1228, to avoid situations in which multiple litigation is obliged with the consequent waste of judicial and litigant's resources and the possibility of inconsistent results, *Hanson,* supra, at page 261, ʻ78 S.Ct. 1228, and to estimate the convenience and fairness to the litigants and substantial justice, *Hutchinson v. Chase and Gilbert,* 45 F.2d 139, 141, 2 Cir.; *Whittaker Corporation v. United Aircraft Corporation,* 482 F.2d 1079, 1083 (1 Cir. 1973).

It is clear that in this case, as in *Vencedor,* supra, most or all of the witnesses on the issue of damages, are likely to be in Puerto Rico, thus making Puerto Rico the favored forum. It is also evident that Royal Milc is an indispensable party in the broad context of the claim. There is some doubt that this claim could be seen in its entirety in any other forum without one or another of the parties raising the same jurisdictional issues presented by Royal Milc. Thus we would face the prospect of multiple litigation wherein no court could adjudicate the claim in its entirety. This is an undesirable result and such a prospect clashes directly with the accepted notions of substantial justice and fairness. There may inconvenience to Royal Milc if it is held amenable to suit in Puerto Rico, but in view of its purposeful contacts with that forum, nothing which amounts to a denial of due process. *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223–224, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

█ In light of the commercial setting of this transaction, the nature of the defendant's overall activities, the purposeful availment of a state license to permit

the sale of its product in Puerto Rico, the foreseeability of consequences in other states when it places its product in interstate commerce, the inferred constructive knowledge as to the product's ultimate destination, the balance of conveniences and the fundamental objection to fractured or multiple litigation, this Court finds nothing offensive to the concept of fair play and justice to permit this plaintiff to bring this suit in the forum where the consequences of the defendant's acts occur. At this stage of the proceedings we held that plaintiff has established prima facie sufficient facts to hold codefendant Royal Milc, Inc., amenable to be sued in Puerto Rico. Plaintiff still has the burden upon trial of proving the facts upon which jurisdiction is based by a preponderance of the evidence. Cf. *Murphy v. Erwin Wasey, Inc.*, 460 F.2d 661 (1st Cir., 1972), and *Milligan v. Anderson*, 522 F.2d 1202 (10th Cir., 1975).

Codefendant Royal Milc is ordered to file its answer to the complaint within the next twenty (20) days.

IT IS SO ORDERED.