Rosario **CARMONA RIOS,**
et al., **Plaintiffs,**

v.

**ARAMARK CORPORATION,**
et al., **Defendants.**

No. 99–1985(DRD).

United States District Court,
D. Puerto Rico.

March 27, 2001.

---

Jose Durand–Carrasquillo, San Juan, PR, for plaintiffs.

Beatriz M. Rodriguez–Burgos, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for defendants.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the Court is defendants' Motion for Summary Judgment and plaintiff's opposition thereto. (Docket Nos. 20 & 29). Plaintiffs filed this action pursuant to the Age Employment Discrimination Act ("ADEA"), 29 U.S.C. § 621, et seq., Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, et seq., Puerto Rico's Law 100 of May 30, 1959 ("Law 100"), 29 P.R. LAWS ANN. § 146, et seq., and Puerto Rico's Law 80 of May 30, 1976 ("Law 80"), 29 P.R. LAWS ANN. § 185a, et seq. Further, co-plaintiff Hernandez seeks damages under Article 1802 of the Puerto Rico Civil Code, 31 P.R. LAWS ANN. § 5141. On August 25, 2000, defendant filed a Motion to Strike alleging that plaintiffs' Statement of Material Facts in Controversy fails to comply with Fed. R.Civ.P. 56 and Local Rule 311.12. (Docket No. 33).[1] For the following reasons, defendants' Motion for Summary Judgment is **GRANTED in part and DENIED**

---

1. Also pending before the Court are Docket Nos. 23, 26 and 27. Plaintiffs' Motion for Extension of Time to File Certified Translations (Docket No. 23) is **GRANTED/MOOT.** Defendant's Motion for Extension of Time to Serve Certified Translations (Docket No. 26) is **GRANTED/MOOT.** Finally, Plaintiffs' Motion for Leave to File Documents in Spanish (Docket No. 27) is **GRANTED.**

in part and defendant's Motion to Strike is **GRANTED in part and DENIED in part.**

## I. BACKGROUND

Plaintiff, Rosario Carmona Rios ("Carmona") commenced working for Aramark Services of Puerto Rico, Inc. ("Aramark"), on April 1, 1981, when she was forty-one (41) years of age. Aramark is a business entity that provides food services to different types of enterprises throughout the island. Carmona was employed by Aramark as a Food Service Director ("FSD"). Some of Carmona's duties as an FSD consisted in managing a particular cafeteria unit where she developed financial and operational objectives, unit budgets, monitored the performance of employees in the unit, supervised the quality of the foods service, met with clients to determine their needs and implemented sales and marketing programs. In 1997 plaintiff worked as an FSD at the Warner Lambert unit in Fajardo, Puerto Rico. Plaintiff worked at the Warner Lambert unit for a period of approximately a year and a half.

Thereafter, as a result of a mistake made by plaintiff while working in the Warner Lambert cafeteria unit, plaintiff was transferred to the Johnson & Johnson's Janssen ("Janssen") plant in Gurabo, Puerto Rico. Plaintiff worked as an FSD in the Janssen plant. Carmona worked at the Janssen plant for approximately seven (7) months and was then transferred to the Baxter Healthcare Corporation unit ("Baxter") in Carolina, Puerto Rico. While working at the Baxter unit, José Baerga was her immediate supervisor. The Baxter unit ceased its operation in Carolina on December 23, 1998, causing that the contract between Baxter and Aramark be terminated. On December 24, 1998 through the beginning of February 1999, plaintiff was placed on vacation leave as a consequence of the Baxter closing. However, subsequently, plaintiff was laid off as stated in a letter from Aramark dated January 26, 1999, because there were no vacant FSD positions at the time. At the time of her dismissal from employment, Carmona was fifty-seven (57) years of age.

## II. STANDARD OF REVIEW

The function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary." *Vega–Rodriguez v. P.R.T.C.*, 110 F.3d 174, 178 (1st Cir.1997). Accordingly, federal courts will grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).

To defeat a motion for summary judgment the resisting party will have to show the existence of "a trial worthy issue as to some material facts." *Cortes–Irizarry v. Corporación Insular*, 111 F.3d 184, 187 (1st Cir.1997). A fact is deemed "material" if the same "potentially affect[s] the suit's determination." *Garside v. Osco Drug Inc.*, 895 F.2d 46, 48 (1st Cir.1990). "An issue concerning such a fact is 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortes–Irizarry*, 111 F.3d at 187. Nonetheless, "speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant on the face of a properly documented summary judgment motion." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996) (citations omitted)

The movant for summary judgment, of course, must not only show that there is

"no genuine issue of material facts," but also, that he is "entitled to judgment as a matter of law." *Vega–Rodriguez,* 110 F.3d at 178. Further, the court is required to examine the record "drawing all reasonable inferences helpful to the party resisting summary judgment." *Cortes–Irizarry.* 111 F.3d at 187. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood ..." *Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987). The facts must be examined under the above criteria because on a potential appeal the appellate court examines "the undisputed facts in the light most congenial to the appellants and adopts their version of any contested facts which are material to our consideration of the issues." *Vega–Rodriguez v. Puerto Rico Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997).

Moreover, the test for summary judgment is applied with the highest rigor when a disputed issue turns on a question of motive and intent. "Summary judgment procedures should be used sparingly ... where the issues of motive and intent play leading roles ... It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'" *Poller v. Columbia Broad. Sys.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *cf Pullman–Standard v. Swint,* 456 U.S. 273, 288–90, 102 S.Ct. 1781, 1790–1791, 72 L.Ed.2d 66 (1982) (discriminatory intent is a factual matter for the trier of fact); *see also William Coll. v. PB Diagnostic Sys., Inc.,* 50 F.3d 1115, 1121 (1st Cir.1995); *Oliver v. Digital Equip. Corp.,* 846 F.2d 103, 107 (1st Cir. 1988); *Lipsett v. University of P.R.,* 864

F.2d at 895. "Under such circumstances, jury judgments about credibility are typically thought to be of special importance." *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 928 (1st Cir. 1983). In *Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 433 (1st Cir.2000), the Court recently stated that "determinations of motive and intent, particularly in discrimination cases, are questions better suited for the jury." *Id.* (citing *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 677 (1st Cir.1996)). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996). *See also Lipsett,* 864 F.2d at 895.

Further, pursuant to Local Rule 311.12, the proponent of a summary judgment motion shall serve and file "annexed to the motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried and the basis of such contention as to each material fact, properly supported by specific reference to the record." Local Rule 311.12. Recently, in *Ruiz Rivera v. Riley,* 209 F.3d 24, 26 (1st Cir.2000), the First Circuit Court of Appeals held that "non compliance [with Local Rule 311.12], as manifested by a failure to present a statement of disputed facts ... justifies the court's deeming the facts admitted and ruling accordingly." *Id.* The importance of this rule is to "lay [ ] out the material facts in dispute clearly for a district court that is swamped with an overwhelming number of civil and criminal dispositive motions." *Dominguez v. Eli Lilly and Co.,* 958 F.Supp. 721, 727 (D.P.R. 1997). "Without such a rule, the Court would have to search through the record,

with or without the assistance of counsel, for lurking evidence of a genuine issue of material fact. Local Rule 311.12 prevents 'the recurrent problem of ferreting through the record' and 'the specter of district judges being unfairly sandbagged by unadvertised factual issues.' " *Id.* (quoting *Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922, 930–31 (1st Cir.1983). (internal citations omitted)).

## III. DEFENDANT'S MOTION TO STRIKE AND PLAINTIFF'S VIOLATION OF THE ANTI–FERRET RULE

■ As previously stated, "[t]he anti-ferret rule serves one crucial purpose. It lays out material facts in dispute clearly for a district court that is swamped with an overwhelming number of civil and criminal dispositive motions." *Dominguez,* 958 F.Supp. at 727. Local Rule 311.12, in pertinent part states that "[t]he papers opposing a motion for summary judgment shall include a **separate, short and concise statement of the material facts** as to which it is contended that there exists a genuine issue to be tried, properly supported by specific reference to the record." (emphasis added). Without a short and concise statement of material facts, the Court would have to ferret through the Record, "study all the attached documents, and carefully scrutinize all the depositions lurking for genuine issues of material facts." *Dominguez,* 958 F.Supp. at 727. Further, Rule 56(f) provides that "a party opposing a properly supported motion for summary judgment '... must set forth *specific facts* showing that there is no genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). (emphasis added). Plaintiffs have failed for the most part to

provide the Court with a "separate, short and concise statement of facts" along with the references on the record as to contested facts: # 's 3, '10, 11, 15, 16, 17, 18, 32, 33, 34, 35, 36, 37, 39, 48, 59, 62, 63, 64, 65, 66, 67, 68, 69, 70 and 71. Therefore, as a result of plaintiffs' violation of the anti-ferret rule, the aforementioned contested facts are striken from the record.

The Court will now address defendant's request to strike as to the remaining contested facts:

a. **Paras. (1), (2), (19), (20), (22), (26), (27), (38), (40), (41), (43), (44), (46), (47), (48):** Granted. The parties agree to that fact, therefore, the facts are uncontested.

b. **Paras. (4) through (9):** Denied. Issues of credibility are best for the jury to decide.

c. **Para. (12):** Denied. The evidence must be presented to the jury, for it may be probative of discrimination.

d. **Paras. (13) and (14):** Denied. Although plaintiff stated in the deposition that by the time she applied for the position a person had already been selected, plaintiffs contest defendants' characterization of the word "selected" as meaning that the position was already filed.

e. **Para. (21):** Denied. Issues of credibility as to defendants' admissions are best suited for the jury.

f. **Paras. (23) and (24):** Denied. The issue of employment competence and qualification must be considered by the jury in this case.

g. **Para. (25):** Denied. However, as defendants correctly point out, Virginia Rivera also has a Professional Cooking Certification from the Cooking Academy of Chicago. (Exh. 13, Plaintiff's statement of facts).

**h. Paras. (28) through (31):** Denied. Issues regarding the existence of Aramark's alleged transfer policy and existing vacancies at the time of plaintiff's dismissal from employment may be probative as to potential discrimination.

**i. Paras. (42) and (45):** Denied. The issue of interpretation of Monteagudo's statement as one that is discriminatory in nature is best for the jury to decide.

**j. Paras. (49) through (55), (58):** Granted. Mr. Angel Ocasio was not similarly situated to plaintiff. "Anecdotes about other employees cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff." *Wyvill v. United Companies Life Ins. Co.,* 212 F.3d 296, 302 (5th Cir. 2000). Further, in order for plaintiff to prove that she was similarly situated to Mr. Ocasio she must show that both "have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." *Rodriguez–Cuervos v. Wal–Mart Stores, Inc.,* 181 F.3d 15, 21 (1st Cir.1999). *See Mitchell v. Toledo Hospital,* 964 F.2d 577, 583 (6th Cir.1992). According to the record, Ocasio had occupied FSD positions in different units. However, at the time plaintiff was dismissed from employment, Mr. Ocasio was not an FSD, he was working as a night shift supervisor with the Janssen unit. (Docket No. 33; Exh. 7, p. 23). In fact, Ocasio resigned from employment in February 1997 and plaintiff was not dismissed until December 1997 (almost ten months later). (Docket No. 33;

Exh. 7, p. 23). Moreover, plaintiff and Ocasio worked in different units or locations and had different immediate supervisors. (Docket No. 20). *See Rodriguez–Cuervos,* 181 F.3d at 21 (holding that because evaluations were "performed by different supervisors, covered a different period of time, and related to different stores" plaintiff and another manager were not similarly situated). Therefore, defendants' treatment of Mr. Ocasio is not probative of whether defendants engaged in discrimination, in light of the fact that the evidence does not involve similarly situated employees.

**k. Para. (56), (57), (60) and (61):** Denied. The newspaper ads may be probative for the Court's eventual determination of the existence of in personam jurisdiction over the parent company, Aramark Corporation.

The following are plaintiff's contested facts deemed admitted after considering defendant's motion to strike: #'s 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 25, 26, 28, 32, 35, 36, 38 and 39. The Court will now address defendants' motion for summary judgment.

## IV. DISCUSSION

### A. The ADEA Claim

Pursuant to the ADEA, it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The employer's liability will depend "on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Products, Inc.,* 530

U.S. 133, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000). "That is, the plaintiff's age must have 'actually played a role in [the employer's decision making] process and had a determinative influence on the outcome.'" *Id.* (citing *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)).

In this case, plaintiff bears the burden of establishing that she has been intentionally discriminated against. *See Shorette v. Rite Aid of Maine, Inc.,* 155 F.3d 8, 12 (1st Cir.1998). In the absence of direct evidence, as in this case, a plaintiff may prove discriminatory evidence through the well established *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) burden shifting framework. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Dominguez–Cruz,* 202 F.3d at 429. The burden is on plaintiff to come forward with sufficient evidence to establish a prima facie case of discriminatory discharge. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Hence, plaintiff has to establish that (1) she is a member of a protected class, i.e. over forty years of age, (2) her job performance was sufficient to meet legitimate job expectations, (3) that she experienced adverse employment action, and (4) the employer did not treat age neutrally. *See Udo v. Tomes,* 54 F.3d 9, 12 (1st Cir.1995); *Goldman v. First Nat'l. Bank of Boston,* 985 F.2d 1113, 1117 (1st Cir.1993). Additionally, "[a] plaintiff whose employment was terminated in the course of a reduction in force need not demonstrate that he was *replaced,* but may show that the 'employer did not treat age neutrally or that younger persons were retained in the same position.'" *Goldman v. First Nat'l. Bank of Boston,* 985 F.2d at 1117 (citing *Hebert v. Mohawk Rubber Co.,* 872 F.2d 1104, 1111 (1st Cir.1989)).

The required prima facie showing is not specially burdensome. *See Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 15 n. 4 (1st Cir.1994). Once the plaintiff has met this relatively light burden, a presumption of discrimination arises and the onus is then shifted to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Mesnick,* 950 F.2d at 823. If the employer produces such a justification, the presumption of discrimination vanishes and the burden shifts back to the plaintiff to show that the employer's alleged justification is merely a pretext for discrimination. *See Serrano–Cruz v. DFI Puerto Rico, Inc.,* 109 F.3d 23, 25–26 (1st Cir. 1997); *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 260 (1st Cir.1994). Plaintiff is required to do more than simply refute or cast doubt on the employers' rationale. The First Circuit has traditionally required evidence that "is not only minimally sufficient evidence of pretext, but that overall reasonably supports a finding of discriminatory animus." *LeBlanc v. Great American Insurance Co.,* 6 F.3d 836, 842 (1st Cir.1993). The Supreme Court discussed the plaintiffs' burden of proof in *St. Mary's Honor Center,* 509 U.S. at 510–15, 113 S.Ct. 2742. In *St. Mary's,* the Court explained that even when defendant's proffered reason is considered pretextual and not credible, plaintiff will always bear the ultimate burden of persuasion to establish discrimination *vel non. Id.* at 517–19, 113 S.Ct. 2742.

In the ADEA context, the evidence as a whole, whether direct or indirect, must be sufficient for a factfinder to infer that the employer's decision was motivated by age animus. *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir.1993); *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5 (1st Cir.1990). The employee has to proffer specific facts to enable the Court to find that the reason given "is not only a sham, but a sham intended to cover up the

employer's real motive: age discrimination." *Mesnick*, 950 F.2d at 824 (citing *Medina–Muñoz*, 896 F.2d at 9). In fact, when assessing pretext, courts focus on the perception of the decision maker (the employer) when it decided to terminate the employees and whether his perception is "credible and reasonable." *Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251, 256. However, it is important to note that "[c]ourts may not sit as super personnel departments, assessing the merits or even the rationality of employers' non discriminatory decisions." *Mesnick*, 950 F.2d at 825.

### 1. Defendant's Legitimate, Non–Discriminatory Reasons for Plaintiff's Layoff

■ Defendants do not contest, for discussion purposes, that plaintiffs presented a prima facie case age discrimination. However, defendants aver meeting their burden of offering a legitimate, nondiscriminatory reason for plaintiff's layoff and that plaintiffs have not produced evidence to rebutt defendant's non-discriminatory reason. (Docket No. 20). Defendants' proffered reason is that "Carmona was laid off by ARAMARK because there were no vacant FSD positions at the time of closing of the Baxter–Carolina plant and/or during the time in which Carmona was on vacation leave." (Defendants' Statement of Facts, paras. 22–24, 29). The articulation of a legitimate, nondiscriminatory reason for an adverse employment decision "entails a burden of production, not a burden of persuasion; the task of proving discrimination remains the [plaintiff's] at all times." *Mesnick*, 950 F.2d at 823. Furthermore, "[a] defendant need not persuade the court that it was actually motivated by the proffered reason. The explanation provided must be legally sufficient to justify a judgment in its favor." *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1335 (1st Cir.1988). The Court

finds that defendants have proffered a legitimate non-discriminatory reason for plaintiff's dismissal. Hence, plaintiff now bears the burden of showing that the proffered reason for plaintiff's dismissal "was but a pretext or a sham." *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1335 (1st Cir.1988).

### 2. Evidence of Pretex and/or Discriminatory Animus

■ Since defendant has articulated a legitimate non-discriminatory reason for plaintiff's termination, the Court must now determine by examining the evidence, if the employer's decision was a pretext or was motivated by intentional age discrimination. *See LeBlanc*, 6 F.3d at 843. The ADEA does not prevent an employer from rejecting an employee "for any reason (fair or unfair) or for no reason, so long as the decision to [reject] ... does not stem from the person's age." *Mesnick*, 950 F.2d at 825. Hence, while ADEA protects employees from being discriminated because of their age, the Act does not require the granting of any special considerations to an employee based upon his age. *See DiBiase v. SmithKline Beecham*, 48 F.3d 719, 725 (3d Cir.1995).

Plaintiffs attempt to rebutt defendants' allegations by offering several instances that allegedly show defendants' proffered reason for plaintiff's dismissal was a pretext for age discrimination and further show discriminatory animus. The Court will now address plaintiff's contentions.

### a. Employee Transfers and Vacancies

Defendants aver that when plaintiff was laid off there were no vacant positions available for a transfer of plaintiff. (Docket No. 20). However, plaintiff alleges that it was regular practice for defendants to transfer FSD employees among the different units around the island whenever con-

tracts were terminated or units closed, and that there were a number of FSD positions available before and after plaintiff was dismissed. (Docket No. 29). Further, plaintiff contends that instead of selecting plaintiff for one of the allegedly available positions, defendants retained or hired younger employees outside the ADEA protected group, as a consequence of their discriminatory practice. (Docket No. 29).

Plaintiffs produced the statement under penalty of perjury of Mr. Ventura Tirado (a former FSD), in which he states that at the time, Aramark had a policy to transfer FSDs between the different units of Aramark throughout the island whenever contracts were cancelled. (Docket No. 29; Exh. 3). Tirado provided specific examples of FSD's that were relocated to other Aramark units when Aramark's clients cancelled their contracts. (Docket No. 29; Exh. 3).[2] Luis Roberto Diaz, an Aramark employee, stated in his deposition that Aramark's practice when contracts with clients terminate is to transfer employees to other units. (Docket No. 29; Exh. 6, p. 108). Additionally, plaintiff also supported the aforementioned transfer allegations in her deposition. (Docket No. 29; Exh. 1, p. 139).[3] The Court, after drawing all reasonable inferences in favor of the non-movant party, finds that plaintiffs have raised a genuine issue of material fact as to the existence of a transfer practice on the part of defendants.

As further evidence of defendant's alleged discriminatory reasons for laying off plaintiff, plaintiffs also aver that there were vacant positions available at the time of plaintiff's lay off and that defendants ignored their own transfer practices by choosing not to place plaintiff in any of the available vacant positions. Plaintiffs assert that in December 23, 1999, the day the contract between Baxter and Aramark was terminated, Mr. Luis Roberto Diaz was dismissed from employment in Citibank and was substituted by Miss Virginia Rivera, a white female, age 32, with less experience than plaintiff. (Luis R. Diaz's Deposition, Exh. 6, p. 54–56). Plaintiffs allege that since defendants knew the Baxter unit was going to close and that there would be a vacant position in Citibank, they should have offered the position to plaintiff. (Docket No. 29). Defendants counter the allegations by stating that the FSD position at Citibank was never vacant and that because Citibank was not satisfied with Mr. Diaz's performance and service, Citibank requested Mr. Diaz to be removed from the account and requested

---

**2.** Some of the examples provided by Tirado were the following:

1) Gaspar Rosado: Aramark's contract with Abbott was cancelled. Thereafter, Mr. Rosado was transferred to Motorola.

2) Sonia Figueroa: Aramark's contract with General Foods was cancelled. Figueroa was then transferred to Olay in Cayey.

3) Liza Freire: Contract with Merck cancelled, she was transferred to Johnson & Johnson CPI in Las Piedras, P.R.

4) Pedro Rivera: Olay contract cancelled. He was transferred to J.J. Janssen.

5) Neyda Alvarado: Mepsi Center contract with Aramark cancelled. She was transferred to Olay in Cayey.

(Docket No. 29, Exh. 3). The Court notes that at trial, plaintiffs will bear the burden of proving that all the aforementioned instances of employee transfers due to "cancellations" can be analogized to plaintiff's situation in this case.

**3.** Mr. Angel Ocasio in his deposition also stated that it was the regular practice of defendants to transfer employees that worked in units where the contracts were cancelled to other locations. (Docket No. 29; Exh. 7, p. 62). Further, attached exhibit 1 of defendants' answers to plaintiffs' interrogatory # 2, provided by Elbia Andujar, Administrative Assistant at Aramark Services of Puerto Rico. Inc. provides a list of numerous employees who were transferred to other locations because the units they worked in ceased to operate. (Docket No. 33; Exh. 4).

Virginia Rivera (an Aramark employee in Citibanks' catering division) to assume the FSD position. (Monteagudo's deposition, Defendant's Exh. 2 p. 26, 80). Nevertheless, contrary to defendants' allegations, plaintiffs provide the deposition testimony of David Romeu, from the Citibank unit, in which he states that he did not request Mr. Diaz to be removed from his position in the Cafeteria. (Docket No. 29; Exh. 14). Thus, there is conflicting testimony that raise issues of credibility that are best reserved for the trier of fact.

Plaintiff also avers that in October 1998, three months before plaintiff was laid off, a vacancy for an FSD was created at the Schering unit. Further, plaintiff states that when she informed her supervisor, Mr. José Baerga, of her interest in the vacant position, plaintiff was told that a candidate had been "selected" for the position by Mr. Gene Monteagudo ("Monteagudo"), Managing Director at Aramark. (Plaintiff's Exhibit 1 p. 157–58).[4] The candidate selected was Mr. Hans Moosberger, a white male, age 37. (Defendant's Statement of Facts paras. 20–24, 29). Plaintiffs allege that Mr. Monteagudo's decision to hire Moosberger demonstrates defendants' hidden motive and intent to discriminate against plaintiff by offering the position to a younger person, because of her race and color. (Docket No. 29). Plaintiffs raise as a controversy "[w]hy Defendants knowing that the Baxter unit was going to close in December 1998, did not offer in October 1998, the Schering unit opportunity to Plaintiff," but instead selected a 37 year old white male for the position. (Docket No. 29). Moreover, as further evidence of discrimination, plaintiffs state that on July 1999, Mr. Hans Moosberger was dismissed from employment (six months after the dismissal of plaintiff), nonetheless, the position was still not offered to her. (Docket No. 29; Exh. 15, p. 85). Additionally, defendants knowing that plaintiff was interested in the position, decided to replace Moosberger with Efrain Santiago, a 34 year old former Assistant FSD at the Warner Lambert Unit. (Docket No. 29, Exh. 15, p. 85). Similarly, when Mayra Lopez, an FSD, left her position in the Ethicon unit on September 7, 1999, defendants did not consider plaintiff when substituting Ms. Lopez's. (Docket No. 29; Exh. 15 p. 85).

Plaintiff also avers being better qualified for the FSD positions than the other employees chosen by Aramark. (Docket No. 29). The Supreme Court in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 2378, 105 L.Ed.2d 132 (1989), held that a plaintiff "might seek to demonstrate that [the employer's] claims to have promoted a better-qualified applicant was pretextual by showing that [plaintiff] was in fact better qualified than the person chosen for the position...." As previously stated, the First Circuit has held that "[c]ourts may not sit as super personnel departments, assessing the merits or even the rationality of employers' non discrimi-

4. Plaintiff stated in the deposition:

Q. Did you at any time request to be transferred?

A. When ... Well, I found out about ... that "Schering" will come up, since I had not been told anything, but I repeat and I tell you, I was always transferred, but in one of the phone calls that I ... that he made or that I called my immediate boss, Mr. José Baerga, well, I inquired about the ... About the position that would arise in October. Because by that time, well, I officially knew it. Then, he mentioned that the boss already had selected the person.

Q. Therefore, they had ...?

A. They had already made a selection.

...

Q. That is, that by the time you applied for the position, a person had been already selected?

A. Yes.

(Plaintiff's Deposition, p. 157–58, Exh. I of Plaintiff's Statement of Facts).

natory decisions." *Mesnick,* 950 F.2d at 825. Furthermore, "the court's role is 'not to second-guess the business decisions of an employer, imposing the court's subjective judgments of which person would best fulfill the responsibilities of a certain job." *Rossy v. Roche Products,* 880 F.2d 621, 625 (1st Cir.1989). However, "[w]hile an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply wether the given reason was a pretext for illegal discrimination." *Id.* (citing *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1012 n. 6 (1st Cir. 1979)). Moreover, "[t]he more idiosyncratic or questionable the employer's reason, the easier it will be to expose it as a pretext, if indeed it is one." *Id.* (citing *Loeb,* 600 F.2d at 1012 n. 6.).

The Court considers the determination of whether plaintiff was better qualified for the position, an issue that is best suited for the jury to consider. The issue "can be considered by the jury in determining if the decision to promote [plaintiff], allegedly based on qualifications, was unreasonable or arbitrary." *Id.* Reviewing the record as a whole, in the light most favorable to plaintiff and indulging all inferences in favor of the non moving party, as the Court is required to do at the summary judgment level, it finds that plaintiff has raised a genuine issue of fact as to pretext and/or discriminatory animus regarding defendants' decision to lay off plaintiff. Moreover, the evidence presented by plaintiff regarding the practice of employ-ee transfers and existing vacancies raise issues of motive and intent that are better suited for the jury to consider. *See Dominguez–Cruz,* 202 F.3d at 433.

### b. The Alleged Statements

■ Plaintiffs offer the remarks made by Mr. Gene Monteagudo, Managing Director in defendant's company, referring to newly hired employees as "new blood," stating that "these are the kind of persons we want in Aramark," and "from them we can learn" as creating a strong inference of age discrimination. The Court finds that the aforementioned statements are not indicative of age discrimination. "Words of praise of youth ... do not, by themselves, indicate a bias against more mature workers."[5] *Mesnick,* 950 F.2d at 825. Additionally, the Court in *Fortier v. Ameritech Mobile Communications,* 161 F.3d 1106, (7th Cir.1998) held that "standard usage and common sense dictate that ... 'new blood' means change. Th[is] comment[ ], whether reviewed in the abstract or in the context of his case, simply cannot support a determination of age bias."[6] In addition, the remarks were made "at least one (1) year or a year and a half prior to Carmona's lay off" and plaintiff has not offered evidence creating a nexus between the statements and plaintiff's termination. (Docket No. 20). *See Mulero–Rodriguez v. Ponte,* 98 F.3d 670, 676 (1st Cir.1996) (finding that statements made eight months before plaintiff's discharge were

---

5. *See Shager v. Upjohn Co.,* 913 F.2d 398, 400–02 (7th Cir.1990) (Superior's remark that "[i]t is refreshing to work with a young man with ... a wonderful outlook on life and on his job" not probative of age discrimination.); *Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1438–39 (9th Cir.1990) (The Court granted summary judgment in favor of employer despite the comment that plaintiff's replacement was "a bright, intelligent, knowledgeable young man.").

6. Defendants cite other cases that stand for the proposition that the phrase "young blood" is not an indication of age discrimination. *See EEOC v. Clay Printing Co.,* 955 F.2d 936 (4th Cir.1992) (the statement "young blood" is not probative of age discrimination or of a discriminatory animus); *Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 314 (6th Cir.1989) (the statement "younger blood" does not create a genuine issue of fact in a case of age discrimination).

"too remote in time for a sufficient nexus to exist" between the statements and the discharge); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir.1994) (holding that statements made two years before the decision to terminate plaintiff were too far removed); *Phelps v. Yale Security, Inc.*, 986 F.2d 1020, 1026 (6th Cir.1993) (finding that statements made almost a year before plaintiff's layoff were too remote in time to constitute evidence of discrimination).

The plaintiff also offers into evidence a comment by Mr. Monteagudo which was made in different occasions, expressing that he came to Puerto Rico "to clean some dust."[7] (Docket No. 20, Exh. 1, p. 140). Plaintiffs allege that the statement is indicative of Monteagudo's discriminatory practices. Unless the statements upon which plaintiffs rely on are related to the defendant's adverse employment decision, they cannot be evidence of a discriminatory discharge. *Deneen v. Northwest Airlines, Inc.*, 132 F.3d 431 (8th Cir.1998). Further, "[t]o be probative of discrimination, isolated comments must be contemporaneous with the discharge or casually related to the discharge decision making process." *Id.* (citing *Geier v. Medtronic, Inc.*, 99 F.3d 238, 241 (7th Cir.1996)). *See Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438–39 (9th Cir.1990) (holding that certain statements unconnected to the employment decision-making process are simply stray remarks that do not demonstrate discriminatory intent).

Although the comments were made by Monteagudo on different occasions, the only incident that the Court finds pertinent is the one made the day before plaintiff was laid off, because the others are not contemporaneous to plaintiff's discharge (one year before plaintiff was discharged).[8] Plaintiff avers overhearing Monteagudo on December 22, 1998 say "I have almost cleaned up the dust, but there are still two or three left." (Defendant's Exh. 1 at p. 141). Plaintiff interprets that Mr. Monteagudo's reference to word "dust" could mean "dust from something old." (Docket No. 29, Exh. 1 p. 145). In addition, plaintiff stated in the deposition that to her knowledge, after the statement was made, three employees (out of the four oldest employees in the FSD list) were dismissed. (Docket No. 29; Exh. 1, p. 151). The Court finds that the comment made by Mr. Monteagudo raises a genuine issue of fact as to the possibility of plaintiff's dismissal being based on age related discriminatory animus, especially because it is contemporaneous to plaintiff's discharge. Finally, because the comment raises issues of motive and intent, "it is prime fodder for a jury." *Mulero–Rodriguez*, 98 F.3d at 677.

### c. Plaintiffs' Statistics

■ Plaintiffs in the opposition to the motion for Summary Judgment and their Surreply Brief have presented to the Court four different tables providing statistical information. The statistics consist

---

7. Ventura Tirado and Luis Roberto Diaz in their depositions stated that they understood Mr. Monteagudo to mean that "dust" as a reference to senior employees. (Docket No. 29; Exh. 5, p. 169; Exh. 6, p. 90). The Court takes notice of the fact that when Mr. Diaz refers to the alleged comments made by Mr. Monteagudo he uses the word "chaffs," instead of "dust." (Docket No. 29, Exh. 6, p. 90).

8. Plaintiff also states that Mr. Monteagudo when introducing the newly hired employees stated that there were persons present in that meeting that were old enough to be his parents. However, the statement is not contemporaneous with the discharge or there is evidence that the statement is casually related to the discharge decision making process, because the statement was made more than a year before plaintiff was discharged. *See Deneen*, 132 F.3d at 431(citing *Geier*, 99 F.3d at 241).

of information such as: 1) a listing of all FSD directors employed by Aramark as of January 1, 1999; 2) a listing of all FSD directors hired by Aramark between March 27, 1997 and August 17, 1998; 3) the employees' age; 4) the employees' color; and 5) place or unit of employment. (Docket Nos. 29 and 32). Plaintiffs have also provided the Court with a table containing information from the Labor and Human Resources Department of Puerto Rico, regarding the employment status of the Puerto Rico civilian population in terms of their age. (Docket No. 32). With the statistics plaintiffs attempt to show "the discriminatory animus of defendants under the administration of Mr. Gene Monteagudo." (Docket No. 29). The Court finds that in the instant case the statistical information provided by plaintiffs do not create an issue of fact for the factfinder to infer that defendants engaged in illegal age discrimination. *See LeBlanc,* 6 F.3d at 836.

The statistical information is flawed because, the comparison of plaintiff's age with the distribution of ages in the FSD group between March 1997 and August 1998 "fails to provide important information regarding the pool of applicants." *LeBlanc,* 6 F.3d at 848. Moreover, "[w]e are not told whether 'qualified older employees were available or applied for those jobs.'" [9] *Id.* (citing *Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 943 (6th Cir.1987)). *See Wards Cove v. Atonio,* 490 U.S. 642, 650–51, 109 S.Ct. 2115, 2121–22, 104

L.Ed.2d 733 (1989) (stating that information about the composition of the *relevant* labor market is necessary in order to raise an inference of discriminatory animus). More importantly, "the fact that recently hired [FSDs] are younger than [plaintiff] is not necessarily evidence of discriminatory intent, but may simply reflect a younger available work force." *Id.*

Second, although plaintiff's statistics compares the ages of the three employees who were involuntarily dismissed from employment with employees who were not discharged, notwithstanding, the data fails to create an issue of discriminatory animus. Plaintiffs identify three FSD employees (Mr. Ventura Tirado (58), Rosario Carmona (58) and Luis Roberto Diaz (55)) who were involuntarily discharged by Aramark as representing "75% of the oldest [FSD] population." (Docket No. 29). However, the statistics show that in fact, the **oldest** person out of the FSD group list, Mr. Argemiro Gómez, was not discharged. Additionally, Mr. Luis Roberto Diaz, one of the three FSD employees listed by plaintiff as allegedly being laid off because of age and color was later rehired by Aramark on February 2000. (Defendant's statement of facts, para. 28).

Finally, the Court cannot see how the data provided by plaintiff of positions eliminated together with their age and color between March 1997 and August 1998 (a total of 15 months) demonstrates a pattern of age discrimination on the part of defendants. Plaintiff's statistics only show the

9. The table with data from the Labor and Human Resources Department of Puerto Rico, lists the total employed population, a percentage of persons employed that are 45 or older and persons employed between the ages of 20 and 44. Additionally, plaintiff provides another table with that total FSDs recruited by defendant, a percentage of FSDs recruited that were 45 years or older and a percentage of FSDs that were between the ages of 20 and 44. Plaintiff then, compared

the data between the two tables and concluded that since the percentage of persons from the total population that were 45 years or older was 28.4% and the percentage of FSDs employed by Aramark that were 45 years or older was 11.1%, the data "showed the preference of Defendants towards the younger population and suggest Defendants discriminatory animus against Plaintiff for reason of age." (Docket No. 32)

dismissal of only three employees, over a fifteen month period from an annual employee population in the island of Puerto Rico of approximately 1,308,000 for the year 1997 alone. "[S]uch a small statistical sample carries little or no probative force to show discrimination." *LeBlanc*, 6 F.3d at 849 (citing *Fallis v. Kerr–McGee Corp.*, 944 F.2d 743, 746 (10th Cir.1991)). *See Villanueva v. Wellesley College*, 930 F.2d 124, 131 (1st Cir.1991); *Simpson*, 823 F.2d at 943; *Sengupta v. Morrison–Knudsen Co.*, 804 F.2d 1072, 1075–76 (9th Cir. 1986). Accordingly, the Court finds that the statistical evidence provided by plaintiff does not provide sufficient reliable factual basis for a reasonable jury to find that defendant's reasons for terminating plaintiff was her age and/or that defendants illegally engaged in age discrimination when firing and/or dismissing employees.

## B. The Title VII Claim

Plaintiff avers that one of the reasons defendants decided to terminate her employment with Aramark is that she is black. (Docket No. 1). Broadly speaking, Title VII enjoins discrimination based on race, color, religion, gender, or national origin. *See* 42 U.S.C. § 2000e.[10] Once again, for discussion purposes, defendants do not contest that plaintiff has established a prima facie case of color discrimination. As previously stated, the Court has already found that the employer has articulated a legitimate reason for plaintiff's termination from employment. *See* Discussion, Part A(1). Therefore, at his stage of the analysis, "plaintiffs must introduce enough evidence to support two findings (1) that the employer's articulated reason for laying off the plaintiff is a pretext, and (2) that the true reason is discriminatory." *Udo*, 54 F.3d at 13. "Com-

plaints based on civil rights statutes **must** do more than state simple conclusions; they must at least outline facts constituting the alleged violation." *Fisher v. Flynn*, 598 F.2d 663, 665 (1st Cir.1979) (emphasis added). The plaintiff must allege enough facts, which at the very least give rise to an inference of discriminatory animus. *See Dewey v. University of New Hampshire*, 694 F.2d 1, 3 (1st Cir.1982).

A plaintiff may institute a cause of action for intra-racial color discrimination under Title VII. *Franceschi v. Hyatt Corporation*, 782 F.Supp. 712, 723 (D.P.R. 1992) (citing *Walker v. Secretary of the Treasury, I.R.S.*, 742 F.Supp. 670, 671 (N.D.Ga.1990) (Walker II)). The *Franceschi* Court recognized "that given our rich heritage, Puerto Ricans of all colors, sizes and ethnic backgrounds abound" and that "Puerto Ricans are of Taino Indian, Black, European and, more recently, Anglo–American ancestry (to name a few) and, more often than not, a mixture of two or more of the above." Plaintiff avers being discriminated against by defendant because she is a black Puerto Rican. Notwithstanding, the Court finds that the record does not support a demonstration of a genuine issue of fact regarding whether plaintiff's discharge was due to color-based discrimination. The record is devoid of any concrete evidence statements, affidavits, or the like that would support a finding of pretext or discriminatory animus on the part of defendant. Further, although plaintiff in her deposition stated that the reason she believed defendants discriminated against her was that the newly hired employees were all white, the only evidence offered in order to raise an issue of fact is the statistics provided by plaintiff.

---

**10.** Title VII decrees that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual ... because

of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

However, the statistics were already found by the Court to be lacking any basis for the support of a finding of discriminatory animus on the part of defendant. *See* Discussion, Part A(2)(c).

The statistical information, in relation to color discrimination, is flawed because: 1) the comparison of plaintiff's color with the distribution of color in regards to the "newly recruited" FSD group (hired between March 1997 and August 1998), "fails to provide important information regarding the pool of applicants." *LeBlanc*, 6 F.3d at 848; 2) the Court lacks information as to whether qualified "black" employees "were available or applied for those jobs." [11] *Id.* (citing *Simpson v. Midland–Ross Corp.* 823 F.2d 937, 943 (6th Cir.1987)); and 3) the Court finds unreliable the data provided by plaintiff of positions eliminated indicating the person's color, between March 1997 and August 1998 (a total of 15 months) as demonstrating a pattern of color discrimination by defendant, since it pertains only to two positions and "such a small statistical sample carries little or no probative force to show discrimination." [12] *LeBlanc*, 6 F.3d at 849 (citing *Fallis v. Kerr–McGee Corp.*,

944 F.2d 743, 746 (10th Cir.1991)). *See Wards Cove v. Atonio*, 490 U.S. 642, 650–51, 109 S.Ct. 2115, 2121–22, 104 L.Ed.2d 733 (1989) (stating that information about the composition of the *relevant* labor market is needed in order to raise an inference of discriminatory animus); *Villanueva v. Wellesley College*, 930 F.2d 124, 131 (1st Cir.1991); *Simpson*, 823 F.2d at 943; *Sengupta v. Morrison–Knudsen Co.*, 804 F.2d 1072, 1075–76 (9th Cir.1986). Accordingly, the Court finds that plaintiff has failed to rebutt defendant's proffered non-discriminatory reason for plaintiff's dismissal and that plaintiff's claim for color discrimination is based on speculation, surmise and lack of evidentiary support. [13] *See Ayala–Gerena*, 95 F.3d at 95. Therefore, plaintiffs' claims against defendants under Title VII for color discrimination must be **DISMISSED.**

## C. Lack of In Personam Jurisdiction

In the motion for summary judgment defendant avers this Court lacks in personam jurisdiction over defendant, Aramark Corporation ("Aramark Corp."). (Docket No. 20). Defendant alleges that the basis for the averments rest on the fact that

11. Plaintiff provided a table with data from the Labor and Human Resources Department of Puerto Rico, listing the total employed population, a percentage of persons employed that are 45 or older and persons employed between the ages of 20 and 44. Additionally, plaintiff provided another table with that total FSDs recruited by defendant, a percentage of FSDs recruited that were 45 years or older and a percentage of FSDs that were between the ages of 20 and 44. Plaintiff then, compared the data between the two tables and concluded that since the percentage of persons from the total population that were 45 years or older was 28.4% and the percentage of FSDs employed by Aramark that were 45 years or older was 11.1%, the data "showed the preference of Defendants towards the younger population and suggest Defendants discriminatory animus against Plaintiff for reason of age." (Docket No. 32)

12. The Luis Roberto Diaz is the only other employee in the FSD list as of January 1, 1999 that is black. The Court points out that Mr. Diaz was rehired by Aramark on or around February 2000. (Docket No. 20; Exh. 6 p. 7).

13. Although plaintiff offers into evidence the fact that Mr. Hans Moosberger, a 37 year old white male, was chosen for the Schering unit instead of plaintiff, defendants have proffered a legitimate non-discriminatory reason for not choosing plaintiff. Defendants aver that when plaintiff informed her supervisor of her interest in the position, Mr. Moosberger had already been selected for the position. (Docket No. 29; Exhibit 1 p. 157–58). Further, plaintiffs have failed to offer evidence to show that defendants' proffered reason "was but a pretext or a sham." *Freeman*, 865 F.2d at 1335.

"Aramark Corporation has no minimum contacts with this forum and operates as a separate corporate entity from Aramark Services of P.R. Inc., plaintiff's former employer." [14] (Docket No. 20).

When a challenge to personal jurisdiction is made, "the burden of proving the facts necessary to sustain jurisdiction is on the plaintiff." *Escude Cruz v. Ortho Pharmaceutical Corp.* 619 F.2d 902, 903 (1st Cir.1980). To meet this burden, plaintiff must make a prima facie showing that jurisdiction exists based on specific facts alleged in the pleadings, affidavits and exhibits. *Ealing Corp. v. Harrods, Ltd.,* 790 F.2d 978, 979 (1st Cir.1986). "If a plaintiff makes a prima facie showing of jurisdiction supported by specific facts alleged in the pleading, affidavits and exhibits, its burden is met." *Id.* "Plaintiff's allegations of jurisdictional facts are construed in its favor." *United States v. Arkwright, Incorporated,* 690 F.Supp. 1133 (D.N.H.1988) (citing *Ealing Corp.,* 790 F.2d at 979.).

In cases such as this one where federal question is the basis of jurisdiction and there is an existence of "insufficient statutory authorization for extraterritorial service," the power of a district Court to assert personal jurisdiction over a nonresident defendant is governed by the forum state's long arm statute. *United Elec. Workers v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1086 (1st Cir.1992). Puerto Rico's long arm statute 32 P.R. LAWS ANN., App. III, Rule 4.7 allows the extension of personal jurisdiction over nonresident defendants, among others instances, when the litigation arises out of transactions conducted in Puerto Rico.[15] The Due Process Clause of the Fourteenth Amendment, however, operates to limit the power of a forum to assert in personam jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1871, 80 L.Ed.2d 404 (1984). Thus, if authorized by the forum's long arm statue, "such exercise of personal jurisdiction must be found to be consistent with the due process requirement of the United States Constitution." *Davila–Fermin v. Southeast Bank,* N.A., 738 F.Supp. 45, 47 (D.P.R.1990); *Matosantos,* 2 F.Supp.2d at 195 ("The federal court exercising diversity jurisdiction must find sufficient contacts between defendant and the forum in order to satisfy the state's long arm statute and to comply with the Fourteenth Amendment's due process clause.").

Under Rule 4.7(a)(1), personal jurisdiction can be exerted over a nonresident defendant when such person "[t]ransacted business" in Puerto Rico. The term "business" is a general one which includes both commercial transactions as well of another nature. *Medina v. Superior Court,* 104 D.P.R. 346, 355 (1975). The phrase "transacted business" in this context "is a practical not a technical or commercial one." *Industrial Siderugica, Inc., v. Thyssen Steel Caribbean, Inc.,* 114 D.P.R. 548, 557(1983) (translation ours); *Medina,* 104 D.P.R. 346, 1975 WL 38701. Further, in *A.H. Thomas Co. v. Superior Court,* 98 P.R.R. 864, 1970 WL 23801 (1970), the Supreme Court of Puerto Rico developed a three part test for determining when the Commonwealth's long arm statute allows the assertion of jurisdiction. Under this test: "[o]ne, there must be an

---

14. Aramark Corporation is a corporation incorporated under the laws of Delaware, with its principal business in Philadelphia, Pa. (Docket No. 20; Exh. 8).

15. 32 P.R. LAWS ANN.App. III Rule 4.7 states in part: "(a) Whenever the person to be served is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person: (1) Transacted business in Puerto Rico personally or through an agent; . . ."

act done or consummated within the forum by the nonresident defendant. Two, the cause of action must arise out of the defendant's action within the forum state. Three, the activity linking defendant, forum and cause of action must be substantial enough to meet the due process requirement of 'fair play and substantial justice.'" *Ortho Pharmaceutical,* 619 F.2d 902, 904 (1st Cir.1980) (citing *A.H. Thomas,* 98 P.R.R. at 870, 1970 WL 23801).

▮▮▮▮ In addition to the forum's long arm statue, the Due Process Clause of the Fourteenth Amendment defines the limits of the state's power to assert personal jurisdiction. *Helicopteros Nacionales,* 466 U.S. at 413–414, 104 S.Ct. 1868; *Pennoyer v. Neff,* 95 U.S. 714, 5 Otto 714, 24 L.Ed. 565 (1877). As with the third prong of the *A.H. Thomas* ' three part test, due process is satisfied when personal jurisdiction is asserted over a nonresident defendant that has "certain minimum contacts" with the forum, such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Helicopteros Nacionales,* 466 U.S. at 413–414, 104 S.Ct. 1868; *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In conducting such an inquiry, "[a]ll the facts must be evaluated to determine whether the defendant purposefully established minimum contacts within the forum." *Young v. Pannell Fitzpatrick & Co.,* 641 F.Supp. 581, 585 (D.P.R.1986) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2185–86, 85 L.Ed.2d 528 (1985)). For such minimum contacts to be sufficient for the exertion of personal jurisdiction, they must be the result of a purposeful act by defendant. As the Supreme Court made clear "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958) (citing *International Shoe Co.,* 326 U.S. at 319, 66 S.Ct. 154.). "[R]andom, isolated, or fortuitous" with the forum will not suffice. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). "Whether defendant's contact with the forum is described as an 'affirmative act' or 'purposeful availment,' the inherent foreseeability of consequences is one of the keystones of personal jurisdiction." *Ortho Pharmaceutical,* 619 F.2d at 904. Foreseeability, in turn, requires that a defendant's contacts in the forum be such that "he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

▮▮▮ In light of the foregoing jurisprudence, the Court finds that plaintiffs in this case have not established sufficient facts to justify the assertion of personal jurisdiction against the defendant. The facts alleged in the complaint, together with the additional documents supplied by the parties, do not demonstrate sufficient facts to trigger Puerto Rico's long arm statute, as well as satisfy the requirements of due process. The first and second prongs of plaintiff's prima facie case are not met, for plaintiff failed to provide evidence indicating that defendant engaged in acts "done or consummated" within Puerto Rico or that plaintiffs' claims arise out of defendants' actions in the forum.[16] Addi-

---

**16.** Plaintiffs have not provided any proof or evidence showing that "the claim underlying

tionally, the Court finds that defendants' contacts in Puerto Rico are not sufficient to satisfy the third prong of the *A.H. Thomas* test and the Due Process Clause. Notwithstanding, plaintiffs aver providing sufficient facts to at least establish the existence of minimum contacts. Because the third prong of the *A.H. Thomas* test and the Due Process Clause, turn on whether "traditional notions of fair play and substantial justice" have been complied with, the Court analyzes them together.

Plaintiffs only provide as evidence (without any case law or specific arguments in support of their allegations): 1) a stationary with the name Aramark Corp.; 2) a newspaper add with the name Aramark Corp.; 3) an introduction of an employee's manual; 4) letters with the Aramark logo from certain company officers; and 5) pay statements with the Aramark logo. First, as to the stationary, letters and newspaper add with the Aramark Corp. logo, defendants undisputedly proffer that it is a "discontinued business judgment error of Mr. Monteagudo." (Monteagudo's Statement Under Penalty of Perjury, Docket No. 31, Exh. 6). Out of the number of letters provided by plaintiff, one of them comes from an officer of Aramark Corp. in Philadelphia, P.A., Mr. Joseph Neubauer and another from Gregory Nance, an officer from Aramark Corp. in Atlanta. However, the Court in *U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir.1990), found that three letters sent to Puerto Rico were insufficient to support the exer-

cise of personal jurisdiction in that venue. Therefore, the Court finds that the two letters provided by plaintiff (less imparting than the ones found to be insufficient in *U.S.S. Yachts* ) as evidence of in personam jurisdiction do not constitute minimum contacts with the forum. *See Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir. 1997) (holding that three telephone calls and one letter within a seven month period were insufficient to support the exercise of personal jurisdiction when the alleged injury did not arise directly from the contacts). The same assertion has to be made regarding the newspaper add. *See Pizarro*, 907 F.2d at 1260 (finding that the nine advertisements placed by defendant in a local newspaper cannot constitutionally assert general in personam jurisdiction); *Helicopteros Nacionales*, 466 U.S. at 418–19, 104 S.Ct. 1868 (holding that the placing of newspaper adds in local paper failed to satisfy the requirements under the Due Process Clause).[17]

The pay statements offered into evidence by plaintiff where sent by Aramark Corp. in Philadelphia, P.A. to employees of Aramark Services of Puerto Rico. (Docket No. 29, Exh. 29). However, as stated in the Sworn Statements provided by Donald S. Morton, Assistant Secretary, Aramark Corp. and Mr. Gene Monteagudo, of Aramark Monteagudo, "Aramark Services of Puerto Rico, Inc. operates independently from its parent corporation and their finances are not intermingled." (Docket No. 20, Exh. 8 and Docket No. 31, Exh. 6).[18] Further, Dennis Broderick, Director

the litigation ... directly arise out of, or relate[s] to, the defendant's forum-state activities." *United Elec. Workers*, 960 F.2d at 1089. *See Pizarro v. Hoteles Concorde International, C.A.*, 907 F.2d 1256, 1260 (1st Cir.1990).

**17.** Plaintiffs absolutely fail to show that the cause of action arises out of the aforementioned contacts. *See A.H. Thomas*, 98 P.R.R. at 870, 1970 WL 23801.

**18.** All that this evidence proposes is that Aramark Corp. provided payroll services to Aramark of Puerto Rico, Inc., which insufficient as a matter of law. *See infra* note 19; *Helicopteros Nacionales*, 466 U.S. at 418–19, 104 S.Ct. 1868.

of Payment Services for Aramark Corp. also offered an uncontroverted statement under penalty of perjury in which he states that the salaries of employees of Aramark Services of Puerto Rico are deducted from the company's bank account with Banco Popular in Puerto Rico.[19] Plaintiff has not provided any information contesting the aforementioned statement under penalty of perjury or evidencing any type of commingling of funds between Aramark Services of Puerto Rico, Inc. and Aramark Corp., the parent company.[20] *See Helicopteros Nacionales,* 466 U.S. at 408, 104 S.Ct. 1868.

Finally, as to the introduction of the employee manual as evidence, which contains that name of Aramark Corp., plaintiff has failed to show or even aver that the evidence constitutes a showing of Aramark Corp.'s involvement in the forum. Further, "the fact that [Aramark of Puerto Rico, Inc.], purchased some equipment from [Aramark Corp.], used some of its stationary for writing internal memorandums and exercised its own prerogative to use [Aramark Corp.'s] catalog and resource manual does not, in and of itself, demonstrate that both corporations were actually an integrated enterprise." *More-*

*no v. John Crane, Inc.,* 963 F.Supp. 72, 76 (D.P.R.1997).[21]

The Court concludes that plaintiffs' alleged proffered contacts, individually and/or in sum, have failed to satisfy the third prong of the *A.H. Thomas* test and the Due Process Clause. Hence, the Court may not constitutionally assert in personam jurisdiction over Aramark Corp. in this case. Moreover, the Court may not assert general jurisdiction over Aramark Corp. As stated in *Helicopteros Nacionales,* 466 U.S. at 414–15, 104 S.Ct. 1868, "[g]eneral jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." However, plaintiff has failed to provide evidence that the dealings in the forum state constitute "continuous or systematic general business contacts."[22] *Matosantos Commercial Co. v. Applebee's Intern., Inc.* 2 F.Supp.2d 191, 197 (D.P.R.1998). Accordingly, this Court must conclude that because plaintiff has failed to satisfy the three prong test found in *A.H. Thomas Co.,* the Due Process Clause, and defendant has failed to meet the general jurisdiction criteria of "continuous and system-

**19.** Mr. Broderick also stated in the statement under penalty of perjury that "Aramark Corporation has no employees in Puerto Rico." (Docket No. 20; Exh. 10).

**20.** Defendants have introduced into evidence a certified letter from the Government of Puerto Rico Department of State, indicating that on or before June 29, 2000, there was no registration of any corporation with the name of Aramark Corporation with the Commonwealth of Puerto Rico's Division of Corporations in the Department of State. (Docket No. 20; Exh. 11).

**21.** The Supreme Court held in the case of *Helicopteros Nacionales,* 466 U.S. at 418–19, 104 S.Ct. 1868, that the nonresident corporation's only contacts with Texas (contracts ne-

gotiations within the state, accepting checks drawn on a Texas bank, purchasing materials and services from a corporation located in Texas, and sending employees to Texas for training) "were insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment."

**22.** The Supreme Court held in the case of *Helicopteros Nacionales,* 466 U.S. at 418–19, 104 S.Ct. 1868, that the nonresident corporation's only contacts with Texas (contracts negotiations within the state, accepting checks drawn on a Texas bank, purchasing materials and services from a corporation located in Texas, and sending employees to Texas for training) "were insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment."

atic" contacts with the forum state, the Court lacks in personam jurisdiction and/or general jurisdiction over Aramark Corp. Accordingly, plaintiffs' claims against Aramark Corp. are **DISMISSED.**

## CONCLUSION

Based on the aforementioned reasons, defendant's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part.** The following claims against defendants are hereby **dismissed:** 1) plaintiffs' claims against co-defendant, Aramark Corporation for lack of in personam jurisdiction; 2) plaintiff's claims against defendants under Title VII for color discrimination; and 3) plaintiff's claims against defendants for sex discrimination.[23]

The Court will refrain from issuing a partial judgment at this time.[24]

For administrative purposes, this Opinion and Order disposes of Docket Nos. 20, 23, 26, 27 and 30.

**IT IS SO ORDERED.**

---

23. Plaintiff alleged in the complaint that she was discriminated against by defendant on the basis of her sex. (Docket No. 1). However, in her deposition she stated that she believed that her gender did not play any role in the decision to dismiss her. (Docket No. 20; Exh. 1, p. 149). Further, plaintiffs amended complaint withdraws her sex based discrimination claim. (Docket No. 12).

24. The First Circuit strongly disfavors partial judgments as they foster piecemeal appeals. *See Nichols v. Cadle Co.,* 101 F.3d 1448, 1449 (1st Cir.1996) ("piecemeal appellate review invites mischief. Because the practice poses a host of potential problems we have warned, time and again, that Rule 54(b) should be used sparingly."); *Zayas–Green v. Casaine,* 906 F.2d 18, 21 (1st Cir.1990) ("This final judgment rule ... furthers the 'strong congressional policy against piecemeal review.'" *Id.* (quoting *In re Continental Investment Corp.,* 637 F.2d 1, 3 (1st Cir.1980)); *Comite Pro Rescate De La Salud v. Puerto Rico Aqueduct and Sewer Authority,* 888 F.2d 180, 183 (1st Cir.1989); *Consolidated Rail Corp. v. Fore River Ry. Co.,* 861 F.2d 322, 325 (1st Cir. 1988); *Spiegel v. Trustees of Tufts Coll.,* 843 F.2d 38, 43 (1st Cir.1988); *Santa Maria v. Owens–Ill., Inc.,* 808 F.2d 848, 854 (1st Cir. 1986)); *see also United States v. Nixon,* 418 U.S. 683, 690, 94 S.Ct. 3090, 3099, 41 L.Ed.2d 1039 (1974).